**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 20, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

RICHARD QUEEN, SUSAN QUEEN,
husband and wife,

      Plaintiffs-Appellants-
Cross/Appellees,

v.

TA OPERATING, LLC, a Delaware
limited liability company,

      Defendant-Appellee-
Cross/Appellant.

Nos. 11-8090 and 11-8098

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 1:10-CV-00170-NDF)**

---

Keith J. Dodson, Williams, Porter, Day, & Neville. P.C. (Stephenson D. Emery, Esq.,
with him on the brief), Casper, Wyoming, for Plaintiffs-Appellants-Cross/Appellees.

Gary R. Scott of Hirst Applegate, LLP (Melissa R. Skorcz, with him on the brief),
Cheyenne, Wyoming, for Defendant-Appellee-Cross/Appellant.

---

Before **TYMKOVICH**, **EBEL**, and **O'BRIEN**, Circuit Judges.

---

**EBEL**, Circuit Judge.

# INTRODUCTION

Plaintiffs Richard and Susan Queen ("Queens") sued Defendant TA Operating, LLC ("TA") in federal district court in Wyoming ("District Court Action"). They brought various claims against TA based on an injury Mr. Queen sustained when he slipped and fell in a parking lot operated by TA. During the course of the District Court Action, the Queens filed for Chapter 7 bankruptcy in California ("Bankruptcy Action"), but did not disclose the District Court Action in their bankruptcy filings. When TA discovered this failure, TA brought it to the attention of the trustee for the Bankruptcy Action ("Trustee"). The Queens subsequently amended their bankruptcy filings to include the District Court Action, but they provided an estimate of its value that was far below what they had indicated in the proceedings before the Wyoming district court, and they claimed that the lawsuit was entirely exempt. Subsequently, the Queens were granted a no-asset discharge in bankruptcy.

In the District Court Action, TA filed a motion for summary judgment on the grounds that the doctrine of judicial estoppel should be applied to dismiss the District Court Action, because the Queens had not disclosed the lawsuit in their bankruptcy proceedings. The district court granted summary judgment in favor of TA on this basis, dismissing the Queens' claims with prejudice. The Queens appealed the district court's ruling, arguing that the district court erred in applying the doctrine of judicial estoppel.

Having jurisdiction under 28 U.S.C. § 1291, we affirm the district court's ruling. Because the Queens adopted an inconsistent position that was accepted by the bankruptcy

2

court, and because the Queens would receive an unfair advantage if not estopped from pursuing the District Court Action, we hold that it was not an abuse of discretion for the court to apply the doctrine of judicial estoppel and grant summary judgment in favor of TA. We also reject the Queens' arguments of mistake and inadvertence, because the record shows that the Queens had knowledge of the claim and a motive to conceal it in their bankruptcy proceedings. Because we decide this appeal on the basis of judicial estoppel, we dismiss as moot TA's cross-appeal.[1]

## BACKGROUND

### I. Factual Background

On February 27, 2007, Plaintiffs Richard and Susan Queen were working as a semi-truck driving team. They parked in a parking lot at the Rawlings Travel Center in Wyoming, which was operated by TA. That night, Mr. Queen slipped and fell while walking in the parking lot. As a result, he broke his ankle and had to be taken by ambulance to the hospital.

---

[1] Before TA filed its motion for summary judgment on the basis of judicial estoppel, it filed a motion for summary judgment on the basis that the Queens had failed to establish the elements of negligence. The district court denied this earlier motion. In its cross-appeal, TA attempts to appeal the denial of this first summary judgment motion, arguing that if we do not uphold the district court's grant of summary judgment on the basis of judicial estoppel, we should uphold the grant of summary judgment on the basis that the Queens failed to establish an element of negligence. We do not consider this issue.

3

## II.    Procedural Background

### A. The Wyoming Lawsuit

The Queens filed a lawsuit against TA in federal district court for the District of Wyoming.  In this District Court Action, among other things, the Queens argued that Mr. Queen had been injured as a result of TA's negligence in maintaining the parking lot. The Queens requested an award for damages that included: (1) Mr. Queen's past and future medical expenses; (2) Mr. Queen's lost past and future wages; (3) Mr. Queen's pain and suffering; (4) Mr. Queen's loss of enjoyment of life, (5) Mrs. Queen's loss of consortium, and (6) an award of punitive damages.

### B. The Bankruptcy Action

While the District Court Action against TA was proceeding in Wyoming, the Queens filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of California.  Although the Queens claim that they disclosed the District Court Action to their bankruptcy attorney, it was not listed in their bankruptcy filings. Specifically, the Queens did not list the lawsuit in their Schedule B – Personal Property, even though Item 21 of the schedule specifically asked the Queens to identify "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and right of setoff claims," and "[g]ive an estimated value of each."  Aplt. App. at 1112.  The Queens also did not list the District Court Action as an exempt asset on their Schedule C – Property Claimed as Exempt.  Moreover, in response to the item on the Statement of Financial Affairs requiring the Queens to "[l]ist all suits and

4

administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case," the Queens marked, "None." Aplt. App. at 1146.

In signing their bankruptcy filings, the Queens declared under penalty of perjury that they had read those documents, and that the information in the filings was true to the best of their knowledge, information, and belief. Further, at a standard creditors' meeting, Mr. Queen completed a questionnaire ("Debtor Questionnaire"), in which he again affirmed that he had signed the bankruptcy petition after reviewing it, that the accompanying Schedules and Statement of Financial Affairs were complete and accurate, and that he did not need to make any corrections or changes.

One of the questions on the Debtor Questionnaire asked the Queens, "Are you suing anyone?" Aplt. App. at 1153. Mr. Queen responded, "Insurance company suing to get money refunded for my injury." Id. No questions were asked at this meeting about the lawsuit that the Queens mentioned on the Debtor Questionnaire, and the Queens provided no other information. After the meeting, the Trustee determined that there were no assets available from the estate to distribute to the creditors.

**C. The Queens' Amended Bankruptcy Filings & Discharge in Bankruptcy**

Subsequently, TA became aware of the Bankruptcy Action. TA emailed the Trustee for the Bankruptcy Action, informing the Trustee that the Queens had not disclosed the District Court Action in their bankruptcy filings. After some communication between TA and the Trustee regarding the District Court Action, the

5

Trustee emailed the Queens and TA, pointing to the question and response in the Debtor Questionnaire, and stating that he had no other notes on this. The remainder of the Trustee's email states: "Given this quasi-disclosure, I am inclined not to take any action in this matter until debtors have amended their schedules and claimed the lawsuit as exempt, assuming they wish to. I will then decide if I am going to object to the exemption." Aplt. App. at 946.

After this email, the Queens filed amended Schedules B and C and an amended Statement of Financial Affairs. In the Amended Schedule B, they listed a "Personal Injury Claim" and placed a total value on that claim of $400,000. On Amended Schedule C, the Queens claimed the District Court Action as entirely exempt under three provisions of the California Code of Civil Procedure. On the Statement of Financial Affairs, the Queens also listed the District Court Action. Under the heading "Nature of the Proceeding," they stated "Law Suit, Personal Injury Claim, Negligence," and they indicated that the case was in the discovery stage. Following the amended filings, neither the Trustee nor any creditors filed an objection to the claimed exemptions. Subsequently, the Trustee again issued a no-asset determination, and the Queens were granted a discharge in bankruptcy.

**D. TA's Motion for Summary Judgment in the District Court Action**

After the Queens amended their filings and obtained a discharge in bankruptcy, TA filed a motion for summary judgment in the District Court Action, arguing that the case should be dismissed on the grounds of judicial estoppel because the Queens had not

6

disclosed that lawsuit in their bankruptcy filings. The district court agreed, and it therefore granted summary judgment in favor of TA, dismissing the Queens' claims with prejudice.

The Queens timely appealed the district court's decision, arguing that the district court improperly applied the doctrine of judicial estoppel. They contend the bankruptcy court did not accept an inconsistent position, because they had amended their bankruptcy filings to disclose the lawsuit prior to their discharge in bankruptcy. They further claim that they did not gain an unfair advantage by failing to disclose or only partially disclosing the lawsuit because the entire lawsuit would have been exempt under California bankruptcy law. They also maintain that any failure to disclose should be excused because of mistake or inadvertence, because it was not done in bad faith and they had no motive to conceal the lawsuit. TA counters by arguing that the elements of judicial estoppel are met, and that the Court should reject the Queens' arguments of inadvertence and mistake.

**STANDARD OF REVIEW**

In reviewing the district court's decision to grant summary judgment on the basis of judicial estoppel, "we view the facts and all reasonable inferences to be drawn therefrom in a light most favorable to the nonmoving party." Eastman v. Union Pac. R. Co., 493 F.3d 1151, 1155–56 (10th Cir. 2007). "Assuming the district court has properly characterized the facts in light of the applicable standard, we then review its decision to judicially estop [the Queens] from pursuing [their] personal injury claims only for an

7

abuse of discretion." Id. at 1156.  And "[a] court abuses its discretion only when it makes a clear error of judgment, exceeds the bounds of permissible choice, or when its decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment." Id. (internal quotations marks omitted).  In this case, the parties do not raise a factual dispute.  Thus, we only consider whether the district court's application of the doctrine of judicial estoppel to the Queens' claims was an abuse of discretion.

## DISCUSSION

The purpose of judicial estoppel "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment . . . . [and] to prevent improper use of judicial machinery." New Hampshire v. Maine, 532 U.S. 742, 749–50 (2001) (internal quotation marks omitted).  Thus, "judicial estoppel is an equitable doctrine invoked by a court at its discretion." Id. at 750 (internal quotation marks omitted).  Three factors "typically inform the decision whether to apply the doctrine [of judicial estoppel] in a particular case," id.; these factors are:

> First, a party's subsequent position must be clearly inconsistent with its former position.  Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled[.]  Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.

Eastman, 493 F.3d at 1156 (alteration in original) (citations omitted) (internal quotation marks omitted).  Nonetheless, these three factors are not "an exhaustive formula for

8

determining the applicability of judicial estoppel." New Hampshire, 532 U.S. at 751. Indeed, "[a]dditional considerations may inform the doctrine's application in specific factual contexts." Id. Specifically, it "may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." Id. at 753.

We will first discuss whether the three judicial-estoppel factors quoted above justify applying the doctrine of judicial estoppel against the Queens. We will then consider the Queens' arguments of inadvertence or mistake.

I.      **The three judicial-estoppel factors support the district court's decision to apply the doctrine against the Queens.**

A. **The Queens adopted clearly inconsistent positions before the district court and the bankruptcy court.**

The district court concluded that the Queens had adopted clearly inconsistent positions regarding the District Court Action before the district court and the bankruptcy court for two primary reasons. First, the Queens initially failed to disclose the District Court Action in their bankruptcy filings. Second, when they did amend their filings, they continued to represent an inconsistent position by listing the lawsuit's value as far less than they had estimated it in the district court proceedings. We agree.

In order for judicial estoppel to be appropriate, "a party's subsequent position must be clearly inconsistent with its former position." Eastman, 493 F.3d at 1156 (internal quotation marks omitted). In Eastman, a case with somewhat similar facts, this Court upheld a district court's grant of summary judgment in a plaintiff's personal injury lawsuit on the basis of judicial estoppel when "[n]owhere on the petition, schedules, or

9

statements [the plaintiff] filed with the bankruptcy court did he disclose his pending personal injury action." Id. at 1158. Indeed, on the plaintiff's Statement of Financial Affairs, he listed two collection suits, but did not list his personal injury lawsuit. Id. at 1153. And "when the trustee specifically asked [the plaintiff] whether he had a personal injury suit pending, he unequivocally responded 'no.'" Id.

Like the plaintiff in Eastman, in their initial filings, the Queens did not disclose that they were engaged in the personal injury lawsuit, even though the documents required disclosure and the Queens affirmed the truthfulness of the filings under penalty of perjury. In fact, similar to the plaintiff in Eastman, the Queens did not reference the lawsuit on their Schedule B and Schedule C. Moreover, they affirmatively represented that they were not engaged in such litigation—the Queens responded, "None," to the question on the Statement of Financial Affairs requiring the Queens to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding filing of this the bankruptcy case." Aplt. App. at 1146.

Although the Queens did refer to a lawsuit on the Debtor Questionnaire at the creditors' meeting, they did not accurately describe the lawsuit on the Questionnaire. When asked, "Are you suing anyone?," Mr. Queen responded by writing, "Insurance company suing to get money refunded for my injury." Aplt. App. at 1153. This response did not disclose that the Queens were the ones that had filed the lawsuit against TA and were seeking to recover damages on their own behalf. Thus, rather than remedying the failure to disclose on the bankruptcy filings, the misleading response on the Debtor

10

Questionnaire only further demonstrates the inconsistent position that the Queens took before the bankruptcy court, as that response suggested the lawsuit would benefit the insurance company, but not them.

Indeed, in Eastman, even though the plaintiff later disclosed in a conversation with the trustee that he had been in an accident, his attorney's conversation with the trustee indicated that the plaintiff's claim was like a worker's compensation claim for relatively minor medical damages, rather than a personal injury lawsuit against his employer and several other defendants. Id. at 1153-54, 1158-59. We concluded in Eastman that "the trustee's subsequent conversation with [the plaintiff's] attorney only served to diffuse the situation and divert attention from the extent of [the plaintiff's] pending claims." Id. at 1158. As with Eastman, rather than rectifying the situation, the Queens' misleading statement in the Debtor Questionnaire only further misrepresented the District Court Action.

Finally, when the Queens amended their bankruptcy filings, they continued to take an inconsistent position regarding the personal injury lawsuit. On the Statement of Financial Affairs, the Queens identified the personal injury lawsuit, indicating that they were plaintiffs suing TA in the federal court in Wyoming, and that the case was in the discovery stage. And on Amended Schedule B, the Queens listed a "Personal Injury Claim," but placed a total value on that claim of $400,000, which, as discussed below, was far less than the amount they represented in the district court proceedings. Moreover, on Amended Schedule C, the Queens claimed the $400,000 lawsuit as entirely

exempt—specifically, they claimed the following amounts were exempt pursuant to three

provisions of the California Code of Civil Procedure:[2]

- $364,875 pursuant to Cal. Civ. Proc. Code § 703.140(b)(11)(E) (2011).
  - o This provision provides an exemption for "[a] payment in compensation of loss of future earnings of the debtor . . ., to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

- $22,075 pursuant to Cal. Civ. Proc. Code § 703.140(b)(11)(D) (2011).
  - o This provision provides an exemption for "[a] payment, not to exceed seventeen thousand four hundred twenty-five dollars ($17,425), on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor."[3]

- $13,050 pursuant to Cal. Civ. Proc. Code § 703.140(b)(5) (2011).
  - o This provision provides an exemption for "[t]he debtor's aggregate interest, not to exceed in value nine hundred twenty-five dollars ($925) plus any unused amount of the exemption . . . in any property."

The Queens' representations to the bankruptcy court regarding the value of the

lawsuit and the exemptions are not consistent with what the Queens represented in the

proceedings before the district court. The Queens claimed as exempt $364,875 for

"compensation of loss of future earnings of the debtor . . ., to the extent reasonably

necessary for the support of the debtor," Cal. Civ. Proc. Code § 703.140(b)(11)(E), but in

---

[2] Since the Queens submitted their amended bankruptcy filings, these provisions have been amended by the California legislature. Throughout this opinion, we will refer to the statutory provisions in effect when the Queens submitted their filings.

[3] It is not clear why the Queens claimed more than this exemption allows. In any case, that matter does not affect the resolution of the issues presented to the Court on appeal.

12

the district court, the Queens estimated in a response to an interrogatory that their lost income was around $1,500,000 in gross earnings. Moreover, in the district court, the Queens sought lost past and future wages—Mr. Queen indicated that his lost gross wages from 2008 were $150,000—but by its terms, § 703.140(b)(11)(E) only provides an exemption for "future earnings." Likewise, § 703.140(b)(11)(E) only provides an exemption for earnings "to the extent reasonably necessary for the support of the debtor," but the Queens' claim for lost wages in the district court is not limited to that necessary for their future support.

The Queens also claimed as exempt $22,075 for "[a] payment . . . on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor," Cal. Civ. Proc. Code § 703.140(b)(11)(D), but in the district court proceeding, the Queens' initial disclosures reported that Mr. Queen's past medical bills totaled $167,842.29. In addition, the Queens also sought damages relating to Mr. Queen's future medical expenses. Further, they claimed damages relating to Mr. Queens' pain and suffering, which are specifically excluded from this exemption.

The Queens' one remaining exemption was for the amount of $13,050, claimed pursuant to Cal. Civ. Proc. Code § 703.140(b)(5). But the Queens' representations in the district court proceedings demonstrate that they expected the lawsuit to exceed this amount. Indeed, the balance of Mr. Queens' medical bills beyond that claimed as exempt under Cal. Civ. Proc. Code § 703.140(b)(11)(D) still exceeded the exemption claimed under Cal. Civ. Proc. Code § 703.140(b)(5) by well over $100,000. Similarly, Mr. Queen

13

claimed damages for lost past wages, and his representations before the district court indicate that this claim has a $150,000 value. Thus, the Queens remaining claims already exceeded the claimed exemption of $13,050 by well over $250,000. But beyond this, the Queens brought claims for additional damages in the district court—Mr. Queen's claim for pain and suffering, his claim for loss of enjoyment of life, Mrs. Queen's claim for loss of consortium, and their claim for punitive damages.

The Queens contend that the $400,000 value "is simply an estimated value of the Queens' claims against [TA]," and they argue that even if they sought a greater amount in the district court, the amount they may actually recover could be much lower than what they were seeking. Aplt. Br. at 37. Thus, they assert that they "should not be punished because they placed a realistic recovery value on their lawsuit instead of claiming multiple millions of dollars." Id.

But the Queens miss the point—in determining whether to apply the doctrine of judicial estoppel, the court must consider whether "a party's subsequent position . . . [is] clearly inconsistent with its former position." Eastman, 493 F.3d at 1156 (internal quotation marks omitted). By providing a significantly lower estimated value to the bankruptcy court that they asserted was entirely exempt, while their position in the district court placed a much higher value on the lawsuit and indicated that it would not be

14

entirely exempt, the Queens took a clearly inconsistent position in the bankruptcy court.[4]

Thus, the first factor to consider in determining whether to apply judicial estoppel is met.

### B. The Queens succeeded in persuading the bankruptcy court to adopt their clearly inconsistent position.

As to this factor, the district court determined that the Queens "clearly persuaded the bankruptcy court to accept their misrepresentation that they were not involved in any lawsuits because the Court later issued a finding of no assets available for distribution" and "[t]he [bankruptcy] Court accepted this finding and [the Queens] received a no asset discharge." Aplt. App. at 1285. The Queens argue that they did not persuade the bankruptcy court to adopt a clearly inconsistent position, because they amended their filings before receiving a discharge. They also point out that they were allowed to amend their filings as a matter of course.[5] After they amended their filings, the Trustee and creditors did not object to the claimed exemption, the Trustee again issued a "no asset" determination, and the bankruptcy court accepted this determination and granted a

---

[4] If the Queens had made consistent representations in the bankruptcy court regarding the value of the District Court Action, there may have been objections to their claimed exemptions, or the bankruptcy court may have stayed proceedings until the District Court Action was resolved.

[5] Indeed, the Federal Rules of Bankruptcy Procedure provide "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009(a); accord In re Arnold, 252 B.R. 778, 784 (B.A.P. 9th Cir. 2000) ("Amendments are and should be liberally allowed at any time absent a showing of bad faith or prejudice to third parties." (emphasis omitted) (internal quotation marks omitted) (superseded by statute on other grounds as stated in In re Salgado-Nava, 473 B.R. 911, 916 (B.A.P. 9th Cir. 2012))).

15

discharge to the Queens. Because the bankruptcy court accepted the claimed exemption and granted the Queens a discharge in bankruptcy <u>after</u> they had amended their filings to disclose the lawsuit, the Queens contend that the district court did not accept a clearly inconsistent position.

In considering this second factor, "a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the <u>perception</u> that either the first or the second court was misled." <u>Eastman</u>, 493 F.3d at 1156 (alteration omitted). In making this determination,

> [o]ur concern is not so much with whether [the Queens] acted with some nefarious motive as it is with whether [their] actions led the bankruptcy court to accept [their] position, so that judicial acceptance of an inconsistent position in a later proceeding would introduce the risk of inconsistent court determinations and thus pose a threat to judicial integrity.

<u>Paup v. Gear Prods., Inc.</u>, 327 F. App'x 100, 107 (10th Cir. 2009) (unpublished) (ellipsis and brackets omitted) (internal quotation marks omitted).

We agree with the Queens that the proper inquiry under this factor involves the position they took in their amended filings, which is the position the bankruptcy court ultimately accepted. In other words, because they received a discharge in bankruptcy based on their amended filings, the relevant question is whether the Queens persuaded the bankruptcy court to adopt an inconsistent position based on their representations in the amended filings. Thus, the district court was incorrect in focusing on whether the district court accepted an inconsistent position based on the original filings. Nonetheless, in

16

examining the Queens' amended filings, it is still apparent that the bankruptcy court accepted a position that was inconsistent with the position adopted by the Queens in the District Court Action. This creates a perception that the bankruptcy court was misled. See Eastman, 493 F.3d at 1156.

In an unpublished decision with similar facts, we reached the same conclusion. In Paup, we considered whether a plaintiff should be judicially estopped from pursuing a claim for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). 327 F. App'x at 102. The plaintiff did not disclose the lawsuit as an asset in her bankruptcy proceedings, but after the defendant in the ADEA lawsuit moved for summary judgment on the basis of judicial estoppel, she "reopened her bankruptcy proceedings, disclosed her ADEA lawsuit, and successfully moved to have a bankruptcy trustee substituted for her in th[e] suit." Id. at 105.[6]

We explained that "[b]ased on [the plaintiff's] incomplete bankruptcy disclosures, the trustee appointed to administer [the plaintiff's] estate concluded that she did not have any assets, a position the bankruptcy court subsequently adopted when it granted [the

_____

[6] Similarly, in Eastman, after the plaintiff's personal injury attorney informed the bankruptcy trustee of the lawsuit, the trustee moved to reopen the bankruptcy proceedings and include the pending lawsuit as an asset of the estate. 493 F.3d at 1154. But we held "that [the plaintiff's] bankruptcy was reopened and his creditors were made whole once his omission became known is inconsequential," and we explained that "[a]llowing [the plaintiff] to back up and benefit from the reopening of his bankruptcy only after his omission had been exposed would suggest[] that a debtor should consider disclosing potential assets only if he is caught concealing them." Id. at 1160.

Plaintiff] a 'no asset' discharge." Paup, 327 F. App'x at 107. The "discharge relieved [the plaintiff] of her debts without her having to reimburse her creditors," but the plaintiff then "claimed an asset for herself that predated her bankruptcy—she, rather than her creditors, sought the full benefit of this pre-petition asset." Id. Accordingly, we held that "such a result gives rise to 'the obvious perception' that the bankruptcy court was misled." Id. (quoting Eastman, 493 F.3d at 1159). Finally, we explained that "[t]his perception is made even more apparent because [the plaintiff] disclosed her ADEA claim to her creditors and the bankruptcy court only when her failure to do so was revealed by [the defendant's] summary judgment motion." Id.

Unlike the plaintiffs in Paup and Eastman, the Queens did not receive a discharge before amending their filings. But like the plaintiffs in Paup and Eastman, the Queens did not disclose the lawsuit to the bankruptcy court until after TA had discovered their failure to disclose the District Court Action and reported it to the Trustee. And as discussed previously, their amended filings did not fully disclose the District Court Action—indeed, the Queens took a materially inconsistent position before the bankruptcy court regarding the District Court Action even in their amended filings. In granting the Queens a discharge in bankruptcy under these circumstances, the bankruptcy court accepted the Queens inconsistent position, which creates a perception that the bankruptcy court was misled. See Eastman, 493 F.3d at 1156.

### C. The Queens would gain an unfair advantage if not estopped from pursuing the District Court Action.

18

The district court concluded that the Queens "derived a substantial unfair advantage because the bankruptcy trustee relied on [their] misrepresentations and determined that there were no assets available for distribution to the creditors." Aplt. App. at 1288. We agree.

"[A] court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped." Eastman, 493 F.3d at 1156. In Eastman, we pointed out that "[a] debtor, once he files for bankruptcy, disrupts the flow of commerce and promptly benefits from an automatic stay," and "then receives the ultimate benefit of bankruptcy when he receives a discharge." Id. at 1159. Morever, "[a] chapter 7 discharge . . . relieves the debtor of any obligation to pay outstanding debts." Id. Accordingly, in Eastman, we held that the plaintiff "received the benefit of a discharge without ever having disclosed his pending personal injury action against Defendants, thus providing him an unfair advantage over his creditors." Id. at 1159-60.

In this case, the Queens were granted a no-asset discharge on the basis of their amended filings, which provided a greatly decreased estimate of the value of the lawsuit and claimed the entire lawsuit as exempt under provisions that do not extend to the full value the Queens' claims. Thus, if not estopped, the Queens would gain an unfair advantage by being allowed to proceed with the District Court Action, because they could pursue the litigation without the risk that any of the award would go to their creditors.

19

Nonetheless, the Queens argue that they would not gain any unfair advantage, because they claim that the entire lawsuit against TA would have been exempt under California Code of Civil Procedure § 704.140(a). This provision states that "[e]xcept as provided in Article 5 . . . of Chapter 6, a cause of action for personal injury is exempt without making a claim." But this provision is followed by California Code of Civil Procedure § 704.140(b), which states that, with certain exceptions, "an award of damages or a settlement arising out of personal injury is exempt to the extent necessary for the support of the judgment debtor and the spouse and dependents of the judgment debtor." Cal. Civ. Proc. Code § 704.140(b) (emphasis added).

In In re Gose, the U.S. Bankruptcy Appellate Panel of the Ninth Circuit noted that § 704.140(a) "negates (with certain exceptions) the need to make a formal claim to exempt a cause of action for personal injury," but "does not state. . . that such a cause of action is exempt in its entirety." 308 B.R. 41, 46 (B.A.P. 9th Cir. 2004) (emphasis added). After considering the legislative history of Cal. Civ. Proc. Code § 704.140(a) and other caselaw interpreting the provision, the court concluded, "[W]e believe that the California Legislature did not intend CCP § 704.140(a) to exempt personal injury claims in their entirety, without reference to necessity for support." Id. at 48. Instead, "subsection (b) defines the scope of exemption identified in subsection (a). . . . both provisions govern the exemption in the personal injury claim." Id. (emphasis omitted).

As explained in In re Gose, California Code of Civil Procedure § 704.140(a) does not establish that the District Court Action would have been exempt in its entirety.

20

Instead, an award would only have been exempt to the extent necessary for the Queens' support. And the Queens' claims for damages go far behind what is necessary for their support. Thus, if the Queens had provided the bankruptcy court with an accurate disclosure of their claims against TA and the estimated value of those claims, they may not have received a no-asset discharge. As is, the Queens received a discharge and their creditors received nothing, but the Queens now stand to gain an award in the District Court Action that would not have been exempt from their creditors had proper disclosures been made to the bankruptcy court. Thus, the Queens would gain an unfair advantage if they were not estopped from pursuing the District Court Action.

Under our deferential standard of review, we conclude that it was not arbitrary, capricious, or manifestly unreasonable, see Eastman, 493 F.3d at 1156, for the district court to hold that the Queens adopted an inconsistent position, which was accepted by the bankruptcy court, and which would provide the Queens with an unfair advantage if not estopped from pursuing the District Court Action.

II.     **Other considerations, including the Queens' claims of inadvertence or mistake, do not weigh against applying the doctrine of judicial estoppel against the Queens.**

We next consider whether other considerations weigh against applying the doctrine of judicial estoppel against the Queens. The Queens claim that their nondisclosure of the personal injury lawsuit was only the result of inadvertence or mistake. Specifically, they assert that they disclosed the lawsuit to their attorney and

21

intended for it to be included in their filings.  The district court rejected the Queens'

argument, and we conclude that the district court did not abuse its discretion.

We have explained that "courts addressing a debtor's failure to satisfy the legal

duty of full disclosure to the bankruptcy court have deemed such failure inadvertent or

mistaken only when, in general, the debtor either lacks knowledge of the undisclosed

claims or has no motive for their concealment."  Eastman, 493 F.3d at 1157 (internal

quotations omitted).  Thus, "[w]here a debtor has both knowledge of the claims and a

motive to conceal them, courts routinely, albeit at times sub silentio, infer deliberate

manipulation."  Id.

In Eastman, we rejected a plaintiff's attempt to claim inadvertence or mistake and

place the blame on his bankruptcy attorney.  493 F.3d at 1157.  There, the plaintiff argued

that "his failure to disclose in no uncertain terms his pending personal injury action to the

bankruptcy court resulted from '[m]istake, inadvertence, confusion, lack of

understanding, lack of legal sophistication, and the like," and that his bankruptcy attorney

was to blame for the error, because "he informed [the bankruptcy attorney] of the

pending lawsuit early in the bankruptcy proceedings."  Id.  In rejecting the plaintiff's

arguments, we held that "he well knew of his pending lawsuit and simply did not disclose

it to the bankruptcy court," and that he "had a motive to sweep his personal injury action

'under the rug' so he could obtain a discharge free and clear of his creditors."  Id. at

1159.

22

The Queens had both knowledge and a motive to conceal. First, the Queens obviously had knowledge of the District Court Action when they submitted their initial filings. And even more importantly, the nondisclosure was specifically brought to the Queens' attention before they amended their filings, but they still did not fully and accurately disclose the lawsuit. At that point, the Queens were certainly aware of both the need to disclose the District Court Action in the bankruptcy proceedings and of what they had represented before the district court.

Second, like the plaintiff in Eastman, the Queens had a motive to conceal and misrepresent the District Court Action in their proceedings before the bankruptcy court. Specifically, it was to their benefit to conceal the claim so that they could receive a full discharge in bankruptcy before proceeding with the lawsuit, because this would allow them to pursue an award for damages without the risk that any of the award would go to their creditors. See id.

Moreover, the Queens cannot escape their responsibility by blaming their bankruptcy attorney. In Eastman, we cited with approval the Seventh Circuit's holding that "a client is bound by the acts of her attorney and the remedy for bad legal advice rests in malpractice litigation." 493 F.3d at 1157 (citing Cannon-Stokes v. Potter, 453 F.3d 446, 449 (7th Cir. 2006)); cf. Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative

23

litigation . . . .").  Accordingly, we held that the plaintiff's assertion in <u>Eastman</u> "that he simply did not know better and his attorney 'blew it' [wa]s insufficient to withstand application of the doctrine [of judicial estoppel]."  493 F.3d at 1159.  The Queens are bound by the acts of their bankruptcy attorney, and moreover, they affirmed under penalty of perjury that the filings were accurate to the best of their knowledge.

For the foregoing reasons, we conclude that it was not arbitrary, capricious, or manifestly unreasonable for the district court to reject the Queens' arguments of mistake and inadvertence.  <u>See</u> <u>id.</u> at 1156.  Accordingly, we hold that the district court did not err in imposing the doctrine of judicial estoppel against the Queens.

## CONCLUSION

The Queens adopted an inconsistent position, which was accepted by the bankruptcy court, and which would provide the Queens with an unfair advantage if not estopped from pursuing their lawsuit against TA.  Moreover, we reject the Queens' arguments of inadvertence and mistake, because the record shows that the Queens had a knowledge of the claim and a motive to conceal.  Under our deferential standard of review, we therefore hold that it was not an abuse of discretion for the court to apply the doctrine of judicial estoppel.  Accordingly, we AFFIRM the district court's grant of summary judgment in favor of TA, and we DISMISS as moot TA's cross-appeal.