**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KARL T. ANDERSON, solely in his
capacity as Chapter 7 Trustee for the
bankruptcy estate of Robert Leone
Davies and Amber Tracy Davies,

      Plaintiff-Appellant,

v.

SEVEN FALLS COMPANY, a
Delaware corporation, d/b/a The New
Seven Falls Company, d/b/a The
Cottage Company, d/b/a Seven Falls
Pipeline & Reservoir,

      Defendant-Appellee.

No. 16-1377
(D.C. No. 1:12-CV-01490-RM-CBS)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE, EBEL,** and **MATHESON**, Circuit Judges.

---

In this personal injury action, the district court ruled that Amber Davies

was judicially estopped from recovering the full value of her claim against Seven

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Falls Company (Seven Falls). The district court based its judicial estoppel ruling on Davies' failure to disclose this claim in their Chapter 7 bankruptcy petition. The bankruptcy trustee, Karl Anderson, who is now the real party in interest, appeals. Exercising jurisdiction pursuant to 28 U.S.C. §§ 1291, 1332, we affirm.

I

What follows is a description of the evidence in the light most favorable to Anderson:

On June 18, 2010, California residents Amber Davies and her now husband visited a creek and waterfalls observation point in Colorado Springs operated by Seven Falls. While traversing a paved walkway, Davies caught her foot in a pavement gap, twisting her ankle.

On August 27, 2010, two months after the injury, Davies retained an attorney to find a possible "basis to have my medical bills paid," as she then lacked health insurance. Aplt. App. at 231–32, 355. That attorney stated that Davies hired him "to represent her in a personal injury lawsuit," id. at 165, and the notice of claim he filed with Seven Falls in August, 2010, refers to her as a "Plaintiff." Id. at 265. He also hired a private investigator to interview former Seven Falls employees. In March 2011, Davies was diagnosed for the first time with Complex Regional Pain Syndrome (CRPS)—a lifelong, debilitating condition—in the region around her injured ankle. On June 3, 2011, one day before Davies' marriage, her counsel filed a settlement demand with Seven Falls'

2

insurer.

The Davies then initiated Chapter 7 bankruptcy proceedings. In early July 2011, Davies met with Los Angeles bankruptcy firm Genesis Law Group (Genesis). The firm's internal disclosure questionnaire asked about accidents occurring in the previous year, and Davies asked if she needed to list her injury from thirteen months prior. Paralegal Chris Kim asked if she planned to sue; Davies said she had hired an attorney to pursue medical bill coverage, but was otherwise unsure. Kim asked if she had already sued; she said no. Davies' affidavit explained: "In response, [Kim] did not tell me that I needed to include this information about the Seven Falls incident . . . I understood from our conversation that the Seven Falls incident was not required to be listed." Id. at 356. Additionally, Davies answered "no" to the questions: "In the near future, do you expect to settle, win or begin a case for personal injury?" and "Even if you never expect to collect, does anyone owe you any money for any reason whatsoever?" Id. Nevertheless, Anderson's appellate brief asserts that "[a]t no time during the bankruptcy proceedings did she believe she had a potential claim that was an asset required to be disclosed to the bankruptcy Trustee or court." Aplt. Br. at 8.

On July 15, 2011, the Davies jointly filed for Chapter 7 bankruptcy in California. Genesis represented them. Their petition listed debts of $316,463.90. Though Schedule F to the bankruptcy petition included medical expenses from her

3

June 2010, accident, her Statement of Financial Affairs (SOFA), signed under penalty of perjury, does not list any lawsuit as an asset. In August 2011, at the Section 341 creditors' meeting, the Davies never mentioned anything about a potential lawsuit. Based on the Davies' disclosures, the bankruptcy court classified their case a "No Asset Case" before discharging their debts on October 26, 2011.

In June 2012, a second doctor confirmed Davies' CRPS diagnosis. On June 8, 2012, nearly eight months after discharge, she filed this diversity action against Seven Falls, claiming over $5 million in damages.

Only after filing her complaint against Seven Falls did Davies disclose her then pending personal injury action to the bankruptcy court. On March 18, 2013, Davies' new personal injury attorney and now appellate counsel, John Gehlhausen, advised Davies to disclose the suit against Seven Falls in the bankruptcy action, and she agreed. Gehlhausen had only recently learned of the bankruptcy proceeding. On March 28, 2013, a year and a half after discharge, the bankruptcy court reopened the case. Ten creditors filed claims totaling $17,011.46, far below the originally listed claims of $316,463.90. Anderson filed, and the district court granted, a Motion for Substitution of Party in the personal injury action as the real party in interest under Federal Rule of Civil

Procedure 17.[1] Anderson does not contest the district court's finding that Davies'

personal injury claim had accrued as a personal asset at the time she filed for

bankruptcy. See Aplt. App. at 362.

Seven Falls moved for summary judgment in the personal injury action,

arguing judicial estoppel barred Anderson from any recovery. "[A]t least to the

extent [the plaintiff's] personal injury claims were necessary to satisfy [the

trustee's] debts," judicial estoppel does not apply to a compliant bankruptcy

trustee. Eastman v. Union Pac. R.R. Co., 493 F.3d 1151, 1155 n.3 (10th Cir.

2007). Thus, the district court limited the potential damages recoverable by

Anderson to the amounts owed creditors, plus his attorneys' fees and trustee's

fee. Anderson appealed, but we dismissed that appeal (No. 14–1515) because the

uncalculated fees posed an unresolved merits question. Anderson v. Seven Falls

Co., 633 F. App'x 691, 695 (10th Cir. 2015). On remand, the district court found

Seven Falls' maximum potential liability to be $45,662.04, and entered final

judgment in that amount in Anderson's favor. That same day Anderson again

appealed, contesting the district court's application of judicial estoppel to limit

the personal injury recovery.

---

[1] Once a lawsuit accrues as a bankruptcy estate asset, "[t]he trustee of the bankruptcy estate has the sole capacity to sue and be sued over assets of the estate." Brumfiel v. United States Bank, 618 F. App'x 933, 937 (10th Cir. 2015) (quoting Mauerhan v. Wagner Corp., 649 F.3d 1180, 1184 n.3 (10th Cir. 2011)); see also 11 U.S.C. § 323.

5

II

A

Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]e view the facts and all reasonable inferences to be drawn therefrom in a light most favorable to the nonmoving party." Eastman, 493 F.3d at 1155–56. We review a district court's judicial estoppel analysis under an abuse of discretion standard, even at summary judgment. Queen v. TA Operating, LLC, 734 F.3d 1081, 1086 (10th Cir. 2013). "A court abuses its discretion only when it makes a clear error of judgment, exceeds the bounds of permissible choice, []when its decision is arbitrary, capricious or whimsical[] or results in a manifestly unreasonable judgment," Eastman, 493 F.3d at 1156 (quotation omitted), or when it commits legal error. See S. Utah Wilderness All. v. Bureau of Land Mgmt., 425 F.3d 735, 750 (10th Cir. 2005). Whether the reviewing court would have reached a different result is irrelevant. See NHL v. Metro. Hockey Club, Inc., 427 U.S. 639, 642 (1976).

B

Judicial estoppel "prevent[s] improper use of judicial machinery." New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (quotation omitted). As an equitable doctrine, judicial estoppel applies in varied circumstances, but we generally apply it when three factors are present.

6

> First, a party's subsequent position must be 'clearly inconsistent' with its former position. Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, 'so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled[.]' Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.

Eastman, 493 F.3d at 1156 (quotations omitted) (quoting New Hampshire, 532 U.S. at 750–51). Courts may also consider whether the debtor's failure to disclose was due to mistake or inadvertence. New Hampshire, 532 U.S. at 753.

We first address Anderson's evidentiary challenge. Anderson argues the district court misapplied the summary judgment standard by failing to view three statements Davies made in her two affidavits in the light most favorable to her. We disagree.

One of the three disputed affidavit statements is hearsay that the district court properly discounted. Davies' statement that Genesis' paralegal, Dahlia Smith, told her she need not report her filed claim after discharge is an out-of-court statement offered for its truth and does not fall within any hearsay exception. See Fed. R. Evid. 801(c).

The district court also disregarded the remaining two disputed affidavit statements as unsubstantiated. It was reasonable for the district court to conclude that Davies' affidavits alone were insufficient to create a genuine factual issue. We have said that, at summary judgment, "[w]e do not consider conclusory and

7

self-serving affidavits." Ellis, 779 F.3d at 1201 (quoting Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1213 (10th Cir. 2002)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings[; they] must be based on more than mere speculation, conjecture, or surmise." Id. (quoting Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004)). In fact, we cited approvingly Cannon-Stokes v. Potter, 453 F.3d 446 (7th Cir. 2006) for the proposition that a debtor's affidavit claiming ignorance of a disclosure duty based on bad legal advice was insufficiently probative to create a genuine issue of material fact. Eastman, 493 F.3d at 1157; see also Ellis, 779 F.3d at 1203 (reaching the same result in an employment dispute). Here, Davies stated in her affidavits that she believed she had no duty to disclose her injury and potential claim because Kim never affirmatively told her to disclose it and that she first learned she had a duty to report the claim after Gehlhausen encouraged her to do so. Just like the affiant's statements in Ellis, Davies' statements are bare assertions unsupported by other record facts. The district court did not abuse its discretion in concluding that these two statements were insufficiently probative to create a genuine issue of material fact.

*1. Clearly inconsistent positions before the district and bankruptcy courts*

Davies adopted inconsistent positions by failing to disclose her potential claim against Seven Falls. In order for judicial estoppel to be appropriate, "a party's subsequent position must be 'clearly inconsistent' with its former

8

position." Eastman, 493 F.3d at 1156 (one set of quotations omitted) (quoting New Hampshire, 532 U.S. at 750). We have previously explained that failing to disclose a potential claim as an asset is clearly inconsistent with then prosecuting an action in pursuit of that claim. See Queen, 734 F.3d at 1090; Eastman, 493 F.3d at 1158; Paup v. Gear Prods., 327 F. App'x 100, 106–07 (10th Cir. 2009).

Anderson argues the district court should have considered Davies' most recent bankruptcy filings, which corrected the omission of the personal injury claim. We disagree. We explained in Queen that when assessing inconsistency in bankruptcy cases, we compare the debtor's filing upon which the bankruptcy court based the discharge to the debtor's position taken in the omitted civil proceeding excluded from the schedule of assets. 734 F.3d at 1091. Queen does not require us to consider the Davies' most recent filing in the bankruptcy proceeding, as Anderson suggests. In Queen, the trustee allowed the debtors to amend their petition after their previously undisclosed personal injury suit became known; because the bankruptcy court relied upon the amended petition when discharging the debtors, we held statements in the amended petition should be used to determine whether the debtor's positions were inconsistent. Id. at 1090–91. Here, the bankruptcy court relied upon the Davies' original petition when entering the bankruptcy discharge, and the district court thus properly looked to the Davies' initial bankruptcy filings when determining whether judicial estoppel applied. Because Davies' position in her original petition (that she had

9

no pending claims) was inconsistent with her position in the district court (actively pursuing a potential claim), the district court properly found this first factor was satisfied.

### 2. *Perception the court was misled*

Did the Davies' actions create even the perception that they successfully misled a tribunal? We look to "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." New Hampshire, 532 U.S. at 750 (quotation omitted). A court accepts a position if the record in the prior case shows the court made a specific finding or holding on that point. See id. at 752. A bankruptcy court accepts a debtor's position as to the value of her estate when it grants a discharge based on that debtor's disclosures. Eastman, 493 F.3d at 1160. The party must have "success" in the prior proceeding, or this element is not satisfied. New Hampshire, 532 U.S. at 750–51. Thus, the question here is whether the Davies' failure to disclose Amber's potential personal injury claim to the bankruptcy court persuaded the bankruptcy court to adopt the Davies' position that theirs was a no asset case, a position we have concluded was inconsistent with her efforts to pursue her personal injury action. We conclude the bankruptcy court did adopt her position when it granted the Davies a no asset discharge, which relieved them of $316,463.90 of debt.

10

The Davies' reopening of their bankruptcy case does not correct the fact that the bankruptcy court was misled. Although In re Riazuddin, 363 B.R. 177 (2007) suggests otherwise, id. at 186, Eastman, which follows Riazuddin by a few months, overrules it on that point. Eastman applied judicial estoppel even though the debtor reopened the case, 493 F.3d at 1154, because "[t]hat [the debtor]'s bankruptcy was reopened and his creditors were made whole once his omission became known is inconsequential. A discharge in bankruptcy is sufficient to establish a basis for judicial estoppel, 'even if the discharge is later vacated.'" Id. at 1160 (quoting Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 784 (9th Cir. 2001)). Thus, the fact that Davies reopened the bankruptcy proceeding does not cure the perception that she misled the bankruptcy court.

### 3. Unfair advantage

Davies does not contest this factor in her brief, and rightfully so. We ask only if the party that changed positions acquired any sort of advantage by the position initially taken, and that test is clearly satisfied by Davies receiving a discharge in bankruptcy. Eastman, 493 F.3d at 1159–60.

### Other considerations: mistake or inadvertence

While the three factors we have addressed are key, they are not exhaustive. See New Hampshire, 532 U.S. at 751. We may credit the civil plaintiff's argument that a failure to disclose an asset was the consequence of mistake or inadvertence "'only when, in general, the debtor either lacks knowledge of the

11

undisclosed claims or has no motive for their concealment.'" Eastman, 493 F.3d at 1157 (quoting In re Coastal Plains, Inc., 179 F.3d 197, 210 (5th Cir. 1999)). If a debtor both knows about a claim and has "a motive to conceal them," courts often "infer deliberate manipulation" of the judicial process. Id.; see Queen, 734 F.3d at 1094.

Anderson argues the district court incorrectly applied the "fourth" factor. Specifically, he argues the district court found deliberate manipulation and treated that finding as an irrebuttable presumption foreclosing any finding of inadvertence based on Davies' subjective knowledge. We disagree for two reasons.

First, the district court did not actually find deliberate manipulation, much less apply an irrebuttable presumption; it merely found that this was not a case of inadvertence. Its order states: "I find and conclude that Ms. Davies' omission with respect to the Seven Falls claim was not inadvertent." Aplt. App. at 362. The court also explained that even "consider[ing] inadvertence outside of the narrow constructs suggested by the case law," it would still conclude "there was no inadvertence here." Id. at 361. Even if we were to read the district court's concluding statements referring to "manipulation and deceit," id. at 364–65, as an implied finding of deliberate manipulation, nothing in the district court's order suggests that it thought it was precluded from considering Davies' subjective beliefs. Indeed, it expressly considered Davies' affidavits, which claimed

12

ignorance of a duty to disclose, and found the affidavits insufficient to create a genuine factual issue. Id. at 364.

Second, the district court did not abuse its discretion in determining that the mistake or inadvertence exception did not apply. "Inadvertence can be established by showing, among other things, either (1) the debtor had no knowledge of the undisclosed asset, or (2) the debtor had no motive to conceal it." Gillman v. Ford, 492 F.3d 1148, 1156 (10th Cir. 2007). Courts may infer that a debtor knows about a claim if she has filed it and the claim is pending before another court while the bankruptcy proceeding is also pending. Eastman, 493 F.3d at 1159. The same inference applies here, where the debtor's actions were fully consistent with preparing to file a claim. And courts may readily infer that debtors have a motive to conceal assets in bankruptcy proceedings. See Queen, 734 F.3d at 1094; Eastman, 493 F.3d at 1159. Here, Davies' actions triggered both adverse inferences. Her claim accrued before she and her husband filed for bankruptcy, and she took multiple actions consistent with filing a claim. Thus, the district court did not abuse its discretion when inferring that Davies knew about her potential claim. Because Davies had invoked the jurisdiction of the bankruptcy court and was seeking a discharge, the district court could readily infer a motive to conceal any potential asset that would result in the denial of a discharge.

13

Anderson invites us to adopt the subjective intent standard applied in Ah Quin v. County of Kauai DOT, 733 F.3d 267 (9th Cir. 2013).  In that case, our sister circuit found that judicial estoppel is inappropriate where the debtor-plaintiff reopens a bankruptcy and fully reports previously undisclosed assets.  Id. at 272–73.  Anderson argues that failing to consider what the debtor-plaintiff subjectively believed is a rigid approach inconsistent with New Hampshire.  We disagree.  New Hampshire gives courts flexibility to apply this equitable doctrine as needed to protect the courts from fraud.  532 U.S. at 751.  Courts are certainly free to consider, or not to consider, the debtor's subjective intent under the flexible factors analysis.  See Marshall v. Honeywell Tech. Sys., 828 F.3d 923, 932 (D.C. Cir. 2016) (quoting Ah Quin, 733 F.3d at 277) (explaining that this alleged circuit split is artificial because "[i]n practice, even those courts of appeals that have followed the Fifth Circuit's lead[, like the Tenth Circuit,] have not been 'as rigid as one would expect' in practice").  Going further and *requiring* courts to consider a debtor-plaintiff's subjective beliefs solidifies an otherwise flexible analysis, which cuts against the Supreme Court's description of the doctrine:  "In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel."  New Hampshire, 532 U.S. at 751.  Thus, we decline to adopt this rule.

14

## III

We AFFIRM the district court's grant of summary judgment on judicial estoppel grounds.

Entered for the Court


Mary Beck Briscoe
Circuit Judge