**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 3, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CENTENNIAL BANKSHARES, INC.,
a Utah corporation; and JOHN DOES
1-100,

      Plaintiffs - Appellants,

v.

THE STATE OF UTAH, acting
through the Utah Department of
Financial Institutions; G. EDWARD
LEARY, an individual; and JOHN
DOES 1-20,

      Defendants-Appellees.

No. 19-4092
(D.C. No. 1:17-CV-00175-RJS)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, and **CARSON**, Circuit Judges.

---

The State of Utah took possession of Centennial Bankshares in March of

2010.  Over seven years later, Centennial brought a lawsuit against Utah and the

head of the state's Department of Financial Institutions, Edward Leary, based on

---

[*]  This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

that seizure and the allegedly inadequate procedures leading up to it. Utah brought a motion for summary judgment, claiming the case was barred by the applicable statute of limitations. The district court agreed, rejecting Centennial's argument that the filing was either timely or that equitable tolling extended the limitations period.

On appeal, Centennial argues the district court erred in granting summary judgment for Utah. It contends the statute of limitations should have been tolled because it did not have knowledge of various pieces of evidence that would have given it notice of a cause of action against the state defendants. By the time it discovered this evidence, the limitations period passed.

We AFFIRM. The district court did not abuse its discretion in holding that the bank should have known the facts underlying its cause of action in 2010, well in time to comply with the relevant statute of limitations.

# I. Background

## A. Factual Background

This case arises out of the 2008 financial crisis. Centennial, like many other financial institutions at the time, was under heightened regulatory scrutiny. In June of 2009, Utah—through its Department of Financial Institutions—sent the bank a cease-and-desist order. The bank's president, Clinton Williams, and board stipulated to the order, waiving the bank's rights to a public hearing regarding

allegations of unsound banking practices and other violations of the law.  In January of 2010, Utah, in coordination with the Federal Deposit Insurance Corporation (FDIC), sent the bank a Report of Examination.  The Report warned the bank that it was undercapitalized and needed an immediate capital infusion.

On March 5, 2010, having seen little change in the bank's financial situation, the state and FDIC petitioned the Second Judicial District for Weber County to allow them to take possession of the bank.  The court heard and considered the petition ex parte.  It granted the petition the same day.  During this same ex parte hearing, the court also granted Utah's request to keep the petition and order sealed until March 8, 2010.  The records were meant to be sealed only several days to prevent a run on the bank but in fact remained under seal until 2018, after plaintiffs asked the court to unseal them.

Later on March 5, 2010, representatives from the state and FDIC went to Centennial and presented the court's order to Williams.  Williams was asked to sign a number of documents during this meeting, including a Certificate of Service acknowledging receipt of three different documents: the "Petition for Order Approving Possession," the "Order Approving Possession," and the "Notice of the Need to Seek Judicial Relief Within Ten Days of the Taking of the Bank." These documents identified which court had issued the relevant seizure order and where the bank's officers could go to learn more about or challenge the order.

Williams was then forced to leave the building without any of his possessions. The state also posted notices on the bank's doors identifying which court had issued the seizure order.

For the next four years, Centennial did not take any steps challenging the seizure. Sometime in the spring of 2014, Scott Priest, a Centennial board member, was approached by a former employee of the FDIC. The former FDIC employee suggested to Priest that the seizure of Centennial may have been procedurally defective. Priest then went to Utah's Department of Financial Institutions, asking for documents regarding the seizure. A representative from the agency told Priest it could not turn the documents over to him without a court order. Priest then contacted a United States Congressman and Senator from Utah in an apparent attempt to gain access to the documents to no avail. Nobody from Centennial sought the documents from the court that issued the order until 2017.

### B. *Procedural Background*

In 2017, Centennial went to the Second Judicial District for Weber County. It brought a complaint against Utah and the head of its Department of Financial Institutions. The complaint included claims of breach of contract, breach of fair dealing and good faith, and takings. The bank, for the first time, also requested the court grant access to the sealed documents. In response, Utah gave Centennial access to the petition and court order authorizing seizure of the bank.

-4-

After reading these documents, Centennial filed an amended complaint adding claims that the state violated due process under Utah law and the Fourteenth Amendment's Due Process Clause under 42 U.S.C. § 1983.

Utah removed the case to federal district court. It then asserted as an affirmative defense that Centennial's claims were barred by the relevant statutes of limitations (breach of contract—6 years; breach of fair dealing and good faith—6 years; Utah constitutional claims—2 years; § 1983 claims—4 years; and takings claims—4 years). The court agreed, applying Utah's law on equitable tolling, which requires an initial showing of disability, *i.e.*, the plaintiff did not know nor reasonably should have known of the facts underlying the cause of action. The district court concluded there was no evidence from which a reasonable jury could find that Centennial was disabled from discovering the relevant information.

## II. Analysis

Centennial claims the district court erred by not equitably tolling the applicable statutes of limitations. Specifically, Centennial contends summary judgment was inappropriate because a reasonable jury could find it was unable to discover the facts underlying the cause of action within the statute of limitations and it exercised reasonable diligence to discover this information.

### A.  Standard of Review

Though this court typically reviews a district court's grant of summary judgment de novo, it reviews a district court's decision not to apply equitable tolling for abuse of discretion.  *Harms v. Internal Revenue Service*, 321 F.3d 1001, 1006 (10th Cir. 2003).[1]  A district court abuses its discretion "only when it makes a clear error of judgment, exceeds the bounds of permissible choice, or when its decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment."  *Queen v. TA Operating, LLC*, 734 F.3d 1081, 1086 (10th Cir. 2013) (internal quotation marks omitted).

### B.  Utah's Law of Equitable Tolling

Under Utah law, a statute of limitations begins to run once the plaintiff has suffered an injury.  *See Berneau v. Martino*, 223 P.3d 1128, 1134 (Utah 2009).  "[M]ere ignorance of the existence of a cause of action does not prevent the running of the statute of limitations."  *Myers v. McDonald*, 635 P.2d 84, 86 (Utah 1981).  And if the statute of limitations has passed for a cause of action, the plaintiff is barred from bringing suit on that claim.  But the statute of limitations

---

[1]  Both parties, in their briefs, said that the district court's ruling should be reviewed de novo.  While this would usually be true for motions on summary judgment, this court has made clear that because "the application of equitable doctrines rests in the sound discretion of the district court, its decision will not be disturbed on appeal absent a showing of abuse of discretion."  *United States v. Clymore*, 245 F.3d 1195, 1198 (10th Cir. 2001).  In any event, whichever standard of review applies, we would reach the same conclusions.

can be extended in certain circumstances under the doctrine of equitable tolling. *Berneau*, 223 P.3d at 1134. Under Utah law, the statute of limitations on a claim is paused by equitable tolling in two situations: (1) if a plaintiff does not become aware of the cause of action because of the defendant's concealment; or (2) if the case presents exceptional circumstances and applying the general rule would be unjust. *Id.*

But even before a court can consider whether concealment or exceptional circumstances applies, the plaintiff must make a threshold showing that it was disabled from discovering the facts underlying the cause of action. *Id.* at 1134–35. Put another way, it must show "that [it] did not know nor should have reasonably known the facts underlying the cause of action in time to reasonably comply with the limitations period." *McBroom v. Child*, 392 P.3d 835, 845–46 (Utah 2016) (internal marks omitted) (quoting *Berneau*, 223 P.3d at 1134–35).

Utah has made clear equitable tolling is not available for those who could have known of the relevant information but inexcusably and unreasonably slept on their rights. *Garza v. Burnett*, 321 P.3d 1104 (Utah 2013). So, for the purposes of determining whether a party was disabled from discovering the facts underlying the cause of action, knowledge can be either actual or constructive. *Berneau*, 223 P.3d at 1135. When a "person has sufficient information to lead him to a fact, he shall be deemed conversant of it." *McBroom*, 392 P.3d at 846

(internal quotation marks omitted).  Such knowledge of the facts triggers a corresponding duty to exercise reasonable diligence.  *Id.*

For example, in *McBroom*, the Utah Supreme Court concluded equitable tolling should not apply to a breach of fiduciary duty claim.  392 P.3d at 846. The plaintiff had signed an agreement, allowing his guardian to sell his shares in a company.  He claimed that he did not understand the implications of the agreement.  He then failed to bring a claim within the statute of limitations.  Utah Supreme Court held that the plaintiff was not disabled for the purposes of tolling because he had enough information about the cause of action to give rise to a duty to exercise reasonable diligence, and, during the intervening time, he had done nothing to discharge this duty.  In other words, he failed to make the initial showing that he did not know nor should have reasonably known the facts underlying his cause of action.

### C. Application

Centennial contends that the district court erred in denying equitable tolling.[2]  The district court concluded Utah's equitable tolling doctrine could not

---

[2]  In the alternative, Centennial argues on appeal that the statute of limitations is unconstitutional as applied to its Fourteenth Amendment Due Process claims brought under 42 U.S.C. § 1983.  But Centennial failed to preserve this argument.  The argument was not briefed for or decided by the district court, but was only mentioned in passing during the hearing on summary judgment. Under our rules, this argument is forfeited and we will not consider it now.  *See*

(continued...)

be used to save Centennial's lawsuit: no reasonable jury could find Centennial had satisfied its burden of showing a disability. On appeal, the bank insists the district court "violate[d] the mandate to construe the evidence in the light most favorable to the bank" during summary judgment. Aplt. Br. at 12. The bank argues that, construing the evidence in its favor, there remain genuine issues of material fact because a reasonable jury could find that they were disabled from discovering the facts underlying its cause of action.

The bank first argues that even if it went to the state court earlier, a reasonable jury could find that the court may not have given it access to the sealed records. Centennial insists the record is bereft of evidence indicating the Second District Court of Weber County would have been responsive to a request for the records.

Second, the bank argues a reasonable jury could find that it exercised reasonable diligence. According to the bank, the duty to exercise reasonable diligence was not triggered at the time of the seizure. Because the bank's president, Williams, had no understanding of the notice he signed on the day of seizure and was forced to leave without copies of the documents he signed, the bank had no knowledge of the facts underlying the cause of action. And when the

[2](...continued)
10th Cir. R. 28.1(A) (requiring an appellant to "cite the precise references in the record where the issue was raised and ruled on").

duty was finally triggered four years later via an informant, a Centennial board member, Priest, exercised reasonable diligence: he went to both the state agency and his federal representatives to obtain access to the original petition and order.

The district court considered the following facts. At the time of the seizure in 2010, the bank's president and board members knew of an injury (the state seizing the bank) and they knew which court had issued the order (the Second Judicial District of Weber County). Yet the bank did nothing to ascertain the underlying arguments and evidence that convinced the Weber County court to allow seizure of the bank. Instead, Centennial's officers failed to seek the relevant documents from the court that issued the seizure order for over seven years. It is true the state court did not issue an order unsealing the documents in 2010. And it is unclear why the documents remained under seal even though the court's order only sealed the documents for three days. But Centennial offers no evidence suggesting that the state court would have continued to keep these records under seal had a motion to unseal been filed.

Despite the bank's protestations, the district court did not abuse its discretion in deciding not to equitably toll the relevant statutes of limitations. The district court concluded that the bank knew the facts underlying the cause of action at the time of seizure: the bank's officers had, at least, constructive knowledge of the relevant facts because they had been informed where they could

-10-

go to learn more about the seizure. The district court concluded this knowledge created a duty to exercise reasonable diligence: notice of the injury and where it could be investigated triggered a duty to go to the Second Judicial District of Weber County. Finally, the district court concluded the bank was not reasonably diligent in seeking out the underlying facts: no one from the bank did anything to discover the facts after the seizure, and even when a board member was told the seizure may have been unlawful, it was another three years before anyone went to the court that issued the order. All told, it took seven years for the bank to finally take reasonable steps to investigate its potential claims.

We agree with the district court's conclusions. The fact that the bank's president was distressed at the time he was notified of the relevant information does not raise a triable question as to knowledge. The fact that the bank's officers were laymen does not alleviate them of the duty of *reasonable* diligence. And the fact that documents remained sealed until after the bank's officers filed their complaint does not excuse their inaction.

Far from abusing its discretion in granting summary judgment, the district court faithfully applied Utah's law on equitable tolling. Looking at the evidence in the light most favorable to the bank, it concluded that the bank had failed to raise a genuine dispute as to the issue of disability. Centennial has not pointed to any facts or cases that convince us this conclusion was in error.

-11-

# III. Conclusion

For the foregoing reasons, the court AFFIRMS the district court's grant of summary judgment to defendants on all of Centennial's claims.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Chief Judge