FILED
United States Court of Appeals
Tenth Circuit

August 19, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

KERRY R. HICKS,

      Plaintiff-Appellee,

v.

DANIEL C. CADLE,

      Defendant-Appellant,

and

THE CADLE COMPANY; BUCKEYE
RETIREMENT CO., LLC, LTD.;
WILLIAM E. SHAULIS,

      Defendants.

No. 10-1575
(D.C. No. 1:04-CV-02616-ZLW-KLM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, Circuit Judge, and **HOLLOWAY** and **PORFILIO**, Senior
Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Defendant Daniel C. Cadle appeals from a district court order confirming an arbitration award of $3.15 million, plus prejudgment interest, against him on plaintiff Kerry R. Hicks's claims of defamation and intentional infliction of emotional distress. While couched in various ways, all of Mr. Cadle's objections concern whether the dispute was properly referred to arbitration. The district court rejected Mr. Cadle's objections for alternative reasons, holding that he was judicially estopped from challenging the arbitrator's authority and that the dispute was in any event properly referred to arbitration. On de novo review, *McWilliams v. Logicon*, Inc., 143 F.3d 573, 575 (10th Cir. 1998), we affirm on the basis of judicial estoppel and hence do not address any issues unrelated to that rationale.

## I. THREE PHASES OF ARBITRATION

A summary of the successive phases of arbitration between the parties will put this appeal, involving the third phase, in context. *See Hicks v. Bank of Am., N.A.* (*Hicks I*), 218 F. App'x 739 (10th Cir. 2007) (appeal from first phase), and *Hicks v. Cadle Co.* (*Hicks II*), 355 F. App'x 186 (10th Cir. 2009) (appeal from second phase). In 2002, Buckeye Retirement Company (Buckeye), alter ego of the Cadle Company (Cadle Co.),[1] purchased a $1 million promissary note held by Bank of America (BOA). While Mr. Hicks was nominally liable, jointly and

---

[1]    Buckeye and Cadle Co. were recognized as alter egos by this court in the decisions cited above. References herein to "Cadle defendants" include Buckeye, Buckeye manager William Shaulis, Cadle Co., and Daniel C. Cadle.

severally, for the full amount of the initial version of the (twice-renewed) note, in light of a collateral agreement between him and BOA, he was not liable on the renewed $1 million note, and BOA so informed Buckeye. Buckeye nevertheless sued Mr. Hicks on the note in Tennessee federal district court in 2003.

The note has an arbitration clause providing that

> any controversy or claim between or among the parties hereto including but not limited to those arising out of or relating to this instrument, agreement or document or any related instruments, agreements or documents, including any claim based on or arising from an alleged tort, shall be determined by binding arbitration in accordance with the Federal Arbitration Act[.]

Aplt. App. Vol. I at 8-9. Invoking this clause, Mr. Hicks initiated arbitration in Colorado against BOA for fraud and against Cadle defendants for bringing suit against him in Tennessee in violation of the clause and for tortious collection activities. BOA repurchased the $1 million note from Buckeye, leading to the dismissal of the suit in Tennessee. But the Colorado arbitration against Cadle defendants for their conduct in attempting to collect on the note continued.

In the meantime, Buckeye's manager sent letters to the Tennessee and Colorado Attorneys General suggesting that Mr. Hicks be investigated for bank fraud. This prompted Mr. Hicks to file suit in Colorado against BOA and Cadle defendants, seeking redress for abuse of process, defamation, and intentional infliction of emotional distress relating to the letters as well as for the alleged wrongdoing already under review in the Colorado arbitration proceeding. BOA

removed the suit to federal court and then, joined by Cadle defendants and opposed by Mr. Hicks, moved for a stay on the ground that the suit had to proceed by way of arbitration in light of the arbitration clause in the underlying note. After the stay was granted, the arbitrator bifurcated the expanded proceeding before him into a phase one, involving the claims arising out of the Tennessee collection suit, and a phase two, involving the claims arising out of the letters sent to the state attorneys general.

The first phase concluded with an award of $400,000 in damages plus fees for Mr. Hicks. The district court confirmed the award, rejecting a challenge to the arbitrator's authority over Cadle Co., which had not purchased the note or filed the suit to collect on it and argued that it could not be bound by the arbitration provision it contained. We affirmed the district court's rejection of this challenge for two reasons: "First, there was abundant evidence . . . that Cadle and Buckeye operated as alter-egos." "Second, and more importantly, Cadle vigorously participated in the arbitration, advancing a counterclaim against Hicks and joining in BOA's motion to stay pending completion of the arbitration." *Hicks I*, 218 F. App'x at 746. As to the second point, we invoked waiver/estoppel principles that are relevant to the instant appeal:

> Cadle defendants asserted that this action must be arbitrated because the arbitration clause in the note clearly encompassed all of the issues and claims Hicks asserted. Cadle therefore waived its objection to arbitration and is estopped from arguing that the arbitrator lacked personal jurisdiction to enter an award against it.

*Id.*

The second phase of arbitration also concluded favorably to Mr. Hicks. The arbitrator allowed him to amend his claims to conform to evidence showing another fourteen defamatory communications regarding bank fraud and perjury, and then awarded him nearly $2 million in compensatory and punitive damages, with interest. The district court confirmed the damages award, rejecting again Cadle defendants' objections that the arbitrator lacked jurisdiction over them and the tort claims asserted against them. We agreed. Regarding Cadle defendants' objection that Mr. Cadle could not be subject to the arbitration clause since he was never a party to the note, we held he was "bound by the arbitration clause as agent[] of The Cadle Co. and Buckeye." *Hicks* II, 355 F. App'x at 193. And we had this to say in rejecting Cadle defendants' objection that the arbitration clause "did not provide a basis for arbitration jurisdiction over [them] for the new tort claims" based on conduct directed toward Mr. Hicks "after [he] had been released from liability under the note":

> We agree with the district court that the second-phase claims were within the jurisdiction of the arbitrator. The note's arbitration clause applied to all controversies arising out of and relating to the note. The note was binding on [BOA's] successors. Defendants' tortious actions are directly tied to the note. Defendants engaged in a continuous course of wrongful conduct all arising from a note with a broad arbitration clause.

*Id.* (citations omitted). Most importantly for our purposes here, in addition to these direct rejoinders, we also held Cadle defendants were judicially estopped

-5-

from challenging the arbitrator's jurisdiction, even citing our prior holding to that effect in *Hicks I* as law of the case. *Id.*

The third phase of arbitration began while the second was under judicial review. The district court permitted Mr. Hicks to file a supplemental complaint, promptly referred to the arbitrator, alleging tortious conduct by Mr. Cadle similar to prior acts but occurring after the second-phase award. He had sent more letters accusing Mr. Hicks of fraud and perjury, this time to attorneys general for Ohio and California in addition to Tennessee and Colorado, as well as letters to the Comptroller of the Currency and the Internal Revenue Service. In short, he "kept on pursuing his crusade" against Mr. Hicks, Aplt. App. Vol. II at 263 (Arbitration Award for third phase), through "a repetition and expansion of his acts in the [second-phase] arbitration," *id.* at 275. As the arbitrator recognized, "the conduct in question [in the third phase] is substantially similar to that in th[e] previous arbitration hearings" and "the core issues that gave rise to the arbitration [in the second and third phases] are the same." *Id.* at 260. The arbitrator awarded Mr. Hicks $1.25 million in compensatory damages and $1.9 million in punitive damages against Mr. Cadle.

## II.  JUDICIAL ESTOPPEL

Mr. Cadle challenged the third-phase award on the same grounds he raised, unsuccessfully, in opposition to the first two phases, nevertheless insisting that this time he should prevail. We agree with the district court that Mr. Cadle is

-6-

again judicially estopped from denying that the arbitration clause covers the claims asserted.

The district court held Mr. Cadle estopped from disputing the arbitrator's authority over the third-phase claims for the same reason he was estopped from disputing the same point with respect to the substantively similar second-phase claims referred to arbitration at his own insistence:

> The claims in the [second phase] were compelled to arbitration based on judicial estoppel because Defendants had stated to the Court their position that the relevant arbitration clause "clearly encompasses all issues and claims" asserted in the Amended Complaint. The "issues and claims" in the Supplemental Complaint [i.e., the third-phase claims] differ only in that they pertain to acts performed three years later. . . . Thus, because Defendants, including Cadle, were judicially estopped from asserting that the arbitrator lacked jurisdiction over the claims in the [second phase], Cadle also is judicially estopped from asserting that the arbitrator lacked jurisdiction over the claims against him in the Supplemental Complaint.

*Id.* at 360. Unable to gainsay the substantive commonality of the tort claims involved in the second and third phases of arbitration, Mr. Cadle points to their one distinguishing feature–chronology–and insists that it makes all the difference in the applicability of judicial estoppel. He contends that because the referral to arbitration instigated at his insistence involved only the second-phase claims, the estoppel consequences of his action must be so limited and cannot be the basis for holding him to the arbitration of the later-asserted third-phase claims.

Mr. Cadle's view of judicial estoppel, limiting it to specific claims rather than applying it to the legal position he took in connection with those claims, is unduly constricted, as revealed by comparison with the Supreme Court's controlling estoppel decision in *New Hampshire v. Maine*, 532 U.S. 742 (2001). That case involved a dispute between New Hampshire and Maine regarding an inland river boundary. While it was the first time they had litigated competing claims over the river, twenty-five years earlier they had litigated rival claims over lobster-fishing rights in the marine waters off the nearby coast. In the earlier litigation, New Hampshire took the legal position that a 1740 English decree, as jointly interpreted by the parties, should control boundary disputes in the area. The marine boundary was fixed accordingly. But in the litigation over the river boundary, New Hampshire sought an advantageous ruling by asserting a contrary view of the 1740 decree. The Supreme Court rejected this gambit on judicial estoppel grounds. For present purposes, it is most significant that the Court did so without hesitating over the fact that the specific rights in dispute in the two cases were different; the material point was that New Hampshire sought a litigation advantage by taking incompatible *legal positions* in the cases.

The Court's general articulation of the judicial estoppel principle reflects this same focus on change of legal position:

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary

> position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. . . . This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.

*Id.* at 749 (alteration omitted) (internal quotation marks omitted).

As we have seen, Mr. Cadle was able to force Mr. Hicks into arbitration on his tort claims for defamation and intentional infliction of emotional distress by taking a clear-cut legal position: Mr. Hicks's tort claims arising from Mr. Cadle's accusations of fraud and perjury concerning Mr. Hicks's liability on the promissary note trigger the note's arbitration provision. And in *Hicks II* we held Mr. Cadle to that legal position when he tried to argue that the arbitration provision did not apply. Now, in response to more claims of the same type based on his continuation of similar tortious conduct, Mr. Cadle again tries to argue that the arbitration provision should not apply. But this time, he insists, he is not estopped from taking this self-contradicting position, because these were not the same specific tort claims he previously succeeded in forcing into arbitration. The weakness in this argument should be apparent from what we have already said about the thrust of the *New Hampshire* decision: the focus of the estoppel analysis is not on the particular claims at issue (coastal-versus-inland boundaries in *New Hampshire*; initial-versus-later tort claims here), but on the litigant's tactical about-face in legal position (as to the effect of the 1740 decree in *New Hampshire* and the effect of the arbitration provision here).

-9-

Mr. Cadle has not cited any authority undercutting the guidance we have drawn from the language and substance of the *New Hampshire* decision. We therefore see no reason for questioning the application of judicial estoppel based on the fact that the tort claims in the third-phase proceedings accrued and were brought into the litigation after Mr. Cadle had successfully forced the second-phase claims into arbitration.

Mr. Cadle also advances a much broader objection to the use of judicial estoppel here. Indeed, he argues that the principle is unavailable *per se* in the arbitration context, because it constitutes a compulsory override of the consent that is the basic precept of arbitration under the Federal Arbitration Act (FAA), *see generally Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773-74 (2010). He is unable to cite any authority for this categorical position, however, and of course it is contrary to our decisions in *Hicks I* and *Hicks II*. We now make explicit what is tacit in those decisions: judicial estoppel here is premised on Mr. Cadle's own request for arbitration based on his position regarding the effect of the arbitration clause, and it would be a perverse understanding of the concept of consent to hold that a party has not consented to arbitration that it *voluntarily sought*. Judicial estoppel does not override consent; it enforces past consent by preventing tactical after-the-fact retraction. It is worth noting that in *Granite Rock Co. v. International Brotherhood of Teamsters*, 130 S. Ct. 2847 (2010), a recent case repeatedly cited by Mr. Cadle, the Court

considered the merits of an argument for arbitration by "waiver or estoppel" without any indication that such legal principles were categorically inapposite in that context, *id.* at 2863 (rejecting argument on the facts). In the absence of more compelling argument and/or authority, we will not adopt a broad rule barring application of estoppel principles to the question of arbitration.

We therefore agree with the district court that Mr. Cadle is estopped from challenging the arbitrability of the tort claims asserted herein by Mr. Hicks.[2]

The judgment of the district court is AFFIRMED.

Entered for the Court

John C. Porfilio
Senior Circuit Judge

---

[2] Because arbitration "necessarily waives jury trial," *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 126 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 1054 (2011), our conclusion that this case was properly referred to arbitration undercuts Mr. Cadle's objection that he was wrongly denied a jury trial–a point we recognized on his last appeal, *see Hicks II*, 355 F. App'x at 194 n.3.