Kansas Insurance Guaranty Association, Intervenor–Appellee,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver of The Columbian Bank and Trust Company, Defendant–Appellant,

and

Carl L. McCaffree, former director and officer of The Columbian Bank and Trust Company; Jimmy D. Helvey; Sam McCaffree, former director and officer of The Columbian Bank and Trust Company, Defendants Counterclaimants.

BancInsure, Inc., Plaintiff Counter Defendant–Appellee,

Kansas Insurance Guaranty Association, Intevenor–Appellee,

v.

Carl L. McCaffree, former director and officer of The Columbian Bank and Trust Company; Jimmy D. Helvey, former director and officer of The Columbian Bank and Trust Company; Sam McCaffree, former director and officer of The Columbian Bank and Trust Company, Defendants Counterclaimants–Appellants,

and

Federal Deposit Insurance Corporation, as receiver of The Columbian Bank and Trust Company, Defendant.

Nos. 14–3063, 14–3064.

United States Court of Appeals, Tenth Circuit.

Aug. 6, 2015.

Joseph Brooks (Colleen J. Boles, Assistant General Counsel, Kathryn R. Norcross, Senior Counsel, and Michelle Ognibene, Counsel, with him on the briefs) Federal Deposit Insurance Corporation, Arlington, VA, for Defendant–Appellant FDIC.

Ryan Gill, Lewis, Brisbois, Bisgaard & Smith, L.L.P., Denver, CO, for Appellee Kansas Insurance Guaranty Association.

Mark G. Arnold of Husch, Blackwell, L.L.P., St. Louis, MO; and Lyndsey J. Conrad and Stacey Bowman of Husch, Blackwell, L.L.P., Kansas City, MO, filed a brief for Defendants–Appellants Carl McCaffree, Jim Helvey, and Sam McCaffree.

Before KELLY, HOLMES, and McHUGH, Circuit Judges.

KELLY, Circuit Judge.

This case presents the question whether claims by the FDIC as receiver (FDIC–R) of Columbian Bank & Trust (Columbian) against three ex-directors of Columbian are covered under a Directors and Officers Liability Insurance Policy (the policy). Defendant–Appellants Carl McCaffree, Jimmy D. Helvey, and Sam McCaffree (director-defendants) and the Federal Deposit Insurance Corporation (FDIC) appeal the district court's grant of summary judgment to BancInsure, Inc. (BancInsure). *BancInsure, Inc. v. McCaffree*, 3 F.Supp.3d 904, 910–16 (D.Kan.2014). The district court held that claims by the FDIC–R were unambiguously excluded by the policy's "insured v. insured" exclusion and that BancInsure was not judicially estopped from denying coverage. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

*Background*

BancInsure issued the policy to Columbian and its parent Columbian Financial Corporation (CFC) for the period of May 11, 2007 to May 11, 2010. App. 81.[1] Under the policy, BancInsure agreed to pay "Loss which the Insured Persons shall be legally obligated to pay." *Id.* at 74. "In-

---

1. Both appellants have filed appendices, and we identify the FDIC's appendix as "App."

sured Person" was defined as "all persons who were, now are or shall be the directors and officers [of CFC and Columbian]." *Id.* The policy provided an aggregate liability limit of $5,000,000 per year. *Id.* at 81.

The original policy contained two exclusions pertinent here: an "insured v. insured" exclusion and a "regulatory" exclusion. The insured v. insured exclusion provides:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against the Insured Persons based upon, arising out of, relating to, in consequence of, or in any way involving ... a Claim by, or on behalf of, or at the behest of, any other Insured Person, the Company, or any successor, trustee, assignee *or receiver of the Company* ....

*Id.* at 75–76 (emphasis added). The exclusion makes exception for "a shareholder's derivative action brought on behalf of the Company by one or more shareholders who are not Insured Persons and make a Claim without the cooperation or solicitation of any Insured Person or the Company." *Id.* at 76.

The regulatory exclusion, on the other hand, excluded coverage for "any action or proceeding brought by or on behalf of any federal or state regulatory or supervisory agency or deposit insurance organization," including "any type of legal action which any such Agency may bring as receiver." *Id.* However, the insured purchased a "regulatory exclusion endorsement" to the policy, which amended the policy "by the deletion of" the regulatory exclusion. *Id.* at 89. The endorsement further set a maximum aggregate liability cap of $5,000,000

for claims brought by "any federal or state regulatory or supervisory agency or deposit insurance organization," and stated that any such payments would reduce the liability limit of the policy as a whole. *Id.* Notably, the endorsement also stated: "Nothing herein contained shall be held to vary, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy other than as above stated." *Id.* According to materials BancInsure provided to Columbian before it purchased the policy, under the regulatory endorsement, "[t]here is full coverage for actions by regulatory agencies." *Id.* at 418. BancInsure's own marketing materials described the endorsement as a "broadening feature." *Id.* at 427. Other BancInsure internal documents also characterized the FDIC–R's claims as "regulatory" in nature. *Id.* at 437, 438, 439, 442, 444.

On August 22, 2008, the Kansas State Bank Commissioner declared Columbian insolvent and appointed the FDIC as receiver. By operation of law, the FDIC–R succeeded to "all rights, titles, powers, and privileges of [Columbian], and of any stockholder, member, accountholder, depositor, officer, or director" of Columbian. 12 U.S.C. § 1821(d)(2)(A). In early September 2008, BancInsure received notice of potential claims the FDIC–R intended to file against the bank's officers and directors. Aplt. App. 456–57, 680–89.

In anticipation of such a suit, CFC and director-defendant Carl McCaffree brought suit against BancInsure seeking a declaratory judgment that the policy covered claims made after August 22, 2008— the date Columbian was declared insolvent—but before the expiration of the policy. As part of this litigation (the *Colum-*

and the director-defendants' appendix as "Aplt.App."

*bian* litigation), CFC issued a series of interrogatories to BancInsure regarding coverage of certain claims, including claims by deposit insurance organizations acting as receiver of Columbian. BancInsure indicated that such claims would be covered under the policy so long as BancInsure was given proper notice. App. 409, 411. These responses were purely hypothetical, as the FDIC–R had not yet brought any such claims and did not bring them until over two years later. Aplee. Supp. App. 38.

The district court ultimately held that the policy remained in effect until May 11, 2010, relying in part on its finding that the regulatory endorsement "provides coverage for actions brought by deposit insurance organizations as receivers during the policy year," which would be meaningless if the policy terminated upon appointment of a receiver. *Columbian Fin. Corp. v. BancInsure, Inc.*, No. 08–2642–CM, 2009 WL 4508576 (D.Kan. Nov. 30, 2009). On appeal, we *sua sponte* determined that no case or controversy existed at the time of the district court's judgment and remanded with instructions to vacate the judgment for lack of subject matter jurisdiction. *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1385 (10th Cir.2011).

BancInsure filed the instant action against the director-defendants in Kansas state court in August 2011, seeking a declaratory judgment that it owes no duty of coverage to the director-defendants for claims brought against them by the FDIC–R. The FDIC–R joined and removed the action to the federal district court in Kansas. At approximately the same time, the FDIC–R brought claims against several of Columbian's former directors and officers alleging negligence,

gross negligence, and breach of fiduciary duty. The FDIC–R explicitly stated that it brought suit "in its capacity as Receiver of The Columbian Bank and Trust Company." Aplee. Supp.App. 38. BancInsure, the director-defendants, and the FDIC–R reached a settlement in February 2013 pursuant to which the director-defendants confessed judgment in favor of the FDIC–R for $5,000,000, and both BancInsure and the director-defendants have made payments in partial satisfaction of this judgment. The settlement allows BancInsure to seek reimbursement if it succeeds in this litigation.

The parties filed cross-motions for summary judgment on the issue of coverage. On February 27, 2014, the district court granted BancInsure's motion, finding that the insured v. insured exclusion unambiguously excluded from coverage claims by the FDIC–R against director-defendants. *BancInsure*, 3 F.Supp.3d at 910–15. Further, the district court held that BancInsure was not judicially estopped from denying coverage based on its answers to CFC's interrogatories in earlier litigation. *Id.* at 915–16. The FDIC–R and director-defendants (collectively, Appellants) timely appealed. In the interim, BancInsure was placed into receivership and liquidated, and the Kansas Insurance Guaranty Association (KIGA) intervened to defend BancInsure's rights pursuant to Kan. Stat. Ann. § 40–2906(a)(2).

## Discussion

Appellants raise two arguments on appeal. First, they contend the district court erred in granting BancInsure summary judgment because the policy does not unambiguously exclude coverage of the FDIC–R's claims against the director-defendants. Second, they argue the district

court abused its discretion in declining to apply the doctrine of judicial estoppel. We address these arguments in turn.

### A. Coverage Under the Policy

We review a grant of summary judgment de novo, applying the same standard as the district court. *Yousuf v. Cohlmia,* 741 F.3d 31, 37 (10th Cir.2014). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In applying this standard, we view the factual record in the light most favorable to the non-moving party. *Duvall v. Ga.–Pac. Consumer Prods., L.P.,* 607 F.3d 1255, 1259 (10th Cir.2010). The parties agree Kansas law applies to interpretation of the policy. Thus, we apply decisions of the Kansas Supreme Court and, where no controlling decision exists, consult other sources, including decisions of the Kansas Court of Appeals. *See Wade v. EMCASCO Ins. Co.,* 483 F.3d 657, 665–66 (10th Cir.2007).

■■■■ Under Kansas law, an insurance policy constitutes a contract, and the interpretation of a contract is a question of law. *AMCO Ins. Co. v. Beck,* 261 Kan. 266, 929 P.2d 162, 165 (1996). "The primary rule in interpreting written contracts is to ascertain the intent of the parties." *Liggatt v. Emp'rs Mut. Cas. Co.,* 273 Kan. 915, 46 P.3d 1120, 1125 (2002). In ascertaining the intent of the parties, Kansas courts consider the policy as a whole, rather than viewing provisions in isolation. *Long v. St. Paul Fire & Marine Ins. Co.,* 589 F.3d 1075, 1082 (10th Cir.2009). Kansas courts interpret policy terms based on how a reasonably prudent insured would understand them. *O'Bryan v. Columbia Ins. Grp.,* 274 Kan. 572, 56 P.3d 789, 793 (2002).

■■■■ Where the language of an insurance policy is clear and unambiguous, we must apply it in its plain and ordinary sense. *Warner v. Stover,* 283 Kan. 453, 153 P.3d 1245, 1247 (2007). Thus, "[i]f the terms of the contract are clear, there is no room for rules of construction, and the intent of the parties is determined from the contract itself." *Liggatt,* 46 P.3d at 1125; *see also Marquis v. State Farm Fire & Cas. Co.,* 265 Kan. 317, 961 P.2d 1213, 1219 (1998). When an insurance contract is unambiguous, a court may not rewrite the contract for the parties; "[i]ts function is to enforce the contract as made." *Catholic Diocese of Dodge City v. Raymer,* 251 Kan. 689, 840 P.2d 456, 459 (1992).

■■■■ Where an insurance policy's plain language is ambiguous, Kansas courts adopt the construction most favorable to the insured. *O'Bryan,* 56 P.3d at 792. A contract is ambiguous if it "contain[s] provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Id.* (citation omitted). Put otherwise, ambiguity arises when application of the rules of construction "leaves it genuinely uncertain which one of two or more meanings is the proper meaning." *Liggatt,* 46 P.3d at 1125 (citation omitted). Courts "should not strain to create an ambiguity where, in common sense, there is none." *First Fin. Ins. Co. v. Bugg,* 265 Kan. 690, 962 P.2d 515, 519 (1998).

■■■■ Finally, although an insured has the burden to show coverage under the policy, an insurer has the duty to show that a specific provision of the policy excludes coverage. *Baugher v. Hartford Fire Ins. Co.,* 214 Kan. 891, 522 P.2d 401, 409 (1974). Exclusions, when ambiguous, are interpreted narrowly against the draft-

er and in favor of coverage. *O'Bryan*, 56 P.3d at 792. Bearing these principles in mind, we turn to the policy at issue and its relevant exclusions.

### 1. *The Plain Meaning of the Insured v. Insured Exclusion Bars Coverage of Claims by the FDIC–R*

■■■ The insured v. insured exclusion provides that the insurer "shall not be liable" for loss in connection with "a Claim by ... any other Insured Person, the Company, or any successor, trustee, assignee or receiver of the Company." App. 75–76. Thus, claims by "any ... receiver of the Company" are excluded from coverage. The term "receiver" is not defined under the contract; thus, we interpret the provision as it is commonly and ordinarily understood. *Warner*, 153 P.3d at 1247. Black's Law Dictionary defines "receiver" as:

> A disinterested person appointed by a court, or by a corporation or other person, for the protection or collection of property that is the subject of diverse claims (for example, because it belongs to a bankrupt or is otherwise being litigated).

Black's Law Dictionary (10th ed.2014). Relatedly, the Federal Deposit Insurance Act, pursuant to which the FDIC was appointed as receiver, *see* 12 U.S.C. § 1821, defines "receiver" to "include[ ] a receiver, liquidating agent, conservator, commission, person, or other agency charged by law with the duty of winding up the affairs of a bank or savings association." *Id.* § 1813(j).

Appellants do not dispute that the FDIC was the "receiver" of Columbian. Upon the Kansas State Bank Commissioner's determination that Columbian was insolvent, the FDIC was appointed as receiver of the bank pursuant to Kansas and federal law. *See* Kan. Stat. Ann. § 9–1907; 12 U.S.C. § 1821(d)(2)(A). Nor do they dispute that the FDIC brought the claims at issue in its capacity as receiver of Columbian. *See* Aplt. FDIC Reply Br. 7; Aplee. Supp.App. 38.

Thus, the plain language of the insured v. insured exclusion appears to unambiguously bar coverage of claims by the FDIC–R against director-defendants. Other courts interpreting identical insured v. insured exclusions have reached the same conclusion. *See Hawker v. BancInsure, Inc.*, No. 1:12–cv–01261–SAB, 2014 WL 1366201, at *5 (E.D.Cal. Apr. 7, 2014); *Davis v. BancInsure, Inc.*, No. 3:12–cv–113–TCB, 2013 WL 1223696, at *9 (N.D.Ga. Mar. 20, 2013); *see also FDIC v. BancInsure, Inc.*, No. CV 12–09882 DMG (MRWx), —— F.Supp.3d ——, ——, 2014 WL 8583832, at *7 (C.D.Cal. June 16, 2014) (noting that "[t]he FDIC does not dispute that the [insured v. insured] Exclusion language, when considered alone, appears to apply to it").

Of course, we do not read the insured v. insured exclusion in isolation, but as part of the policy as a whole. *See Long*, 589 F.3d at 1082. Appellants argue that when the language of the insured v. insured exclusion is read in light of other policy provisions, and BancInsure's prior statements, it is at least ambiguous whether it bars claims by the FDIC–R, and thus must be construed in favor of the insured. First, they contend that the shareholder derivative action exception renders the insured v. insured exclusion ambiguous as applied to claims by the FDIC–R. Second, they assert that the endorsement to the regulatory exclusion renders the insured v. insured ambiguous as applied to

claims by the FDIC–R. And finally, they argue that BancInsure's prior statements support coverage under the policy. We address these arguments in turn, ultimately concluding that none of them are persuasive.

### 2. *The Shareholder Derivative Action Exception Does Not Render the Insured v. Insured Exclusion Ambiguous*

First, Appellants argue that the shareholder derivative action exception to the insured v. insured exclusion renders the exclusion ambiguous as applied to claims by the FDIC–R. Aplt. FDIC Br. 22–24; Aplt. McCaffree Br. 43–46. The shareholder derivative action exception removes from the scope of the insured v. insured exclusion "a shareholder's derivative action brought on behalf of the Company by one or more shareholders who are not Insured Persons and make a Claim without the cooperation or solicitation of any Insured Person or the Company." App. 76.

■■■ Appellants do not argue that the shareholder derivative action exception applies, but instead contend that its presence "shows intent to cover actions similar to those brought by the FDIC–R." Aplt. FDIC Reply Br. 11; *see* Aplt. McCaffree Reply Br. 20. By statute, the FDIC–R succeeds to "all rights, titles, powers, and privileges" of not only a failed bank, but also "any stockholder, . . . accountholder, [and] depositor" of the institution. 12 U.S.C. § 1821(d)(2)(A). Appellants argue that, because actions by the FDIC–R against directors "share certain common characteristics with a shareholder derivative action," the insured v. insured exclusion is inapplicable, or at least ambiguous, as applied to such claims. Aplt. FDIC Br. 23.

Appellants cite a number of cases that have held that shareholder derivative action exceptions at least render ambiguous insured v. insured exclusions as applied to claims by the FDIC–R. *See* Aplt. FDIC Br. 23–24 & n. 10 (citing *Am. Cas. Co. v. Sentry Fed. Sav. Bank,* 867 F.Supp. 50, 59 (D.Mass.1994); *Am. Cas. Co. v. FDIC,* 791 F.Supp. 276, 278 (W.D.Okla.1992); *Am. Cas. Co. v. Baker,* 758 F.Supp. 1340, 1349–50 (C.D.Cal.1991); *FDIC v. Nat'l Union Fire Ins. Co.,* 630 F.Supp. 1149, 1157 (W.D.La.1986); *FDIC v. BancInsure, Inc.,* —— F.Supp.3d at ——–——, 2014 WL 8583832, at *7–9; *Progressive Cas. Ins. Co. v. FDIC,* No. 11–CV–14816, 2012 WL 8437693, at *3 (E.D.Mich. Sept. 24, 2012)).

However, all of these cases, save one,[2] dealt with insured v. insured exclusions that did not explicitly apply to claims by a receiver of the company. The insured v. insured exclusions at issue in these cases applied to, for instance, "any claim made . . . by any other Director or Officer or by the Institution . . . except for a shareholders derivative action." *Am. Cas. Co.,* 791 F.Supp. at 277; *see also Sentry Fed. Sav. Bank,* 867 F.Supp. at 59 (same language); *Baker,* 758 F.Supp. at 1343 (same language); *Nat'l Union Fire Ins. Co.,* 630 F.Supp. at 1152 (essentially same language). Thus, courts had to grapple with the question whether the receiver "stepped into the shoes" of the institution, such that

---

**2.** The only case concluding that a shareholder derivative action exception rendered an insured v. insured provision that encompasses suits by a "receiver" ambiguous as applied to a claim by the FDIC–R is *FDIC v. BancInsure, Inc.,* 2014 WL 8583832, at *7–9. We find the Central District of California's decision unpersuasive and inconsistent with principles of Kansas contractual interpretation for reasons discussed below.

claims by the receiver were excluded as would be claims by the institution itself. *Am. Cas. Co.*, 791 F.Supp. at 277; *see Sentry Fed. Sav. Bank*, 867 F.Supp. at 59.

Unsurprisingly, in the absence of clear language stating that claims by a receiver of the company were excluded, these courts found the exclusions at least ambiguous as to claims by a receiver, given the similarity of such claims to shareholder derivative actions. But, as latter decisions have recognized, these cases shed little light on whether an exclusion explicitly barring coverage for claims by a "receiver" of the company are ambiguous. *See Hawker*, 2014 WL 1366201, at *8–9 ("The insured versus insured exclusions in the cases cited by the FDIC did not include language expressly excluding claims brought by 'receivers.'"); *Davis*, 2013 WL 1223696, at *9 (rejecting this line of authority because "none of the cases making up the ... view involved policy language expressly providing that the exclusion applied to successors, receivers, assignees and trustees").

In fact, decisions finding insured v. insured provisions ambiguous as to claims by a receiver relied on the absence of policy language present here. *See, e.g., Am. Cas. Co. v. Fed. Sav. & Loan Ins. Corp.*, 704 F.Supp. 898, 901 (E.D.Ark.1989) (concluding that policy at issue was ambiguous in part because there was no "reference in the endorsement to successors, assigns, trustees or receivers"). For instance, the Western District of Oklahoma found that

claims by the FDIC–R were not excluded based on the fact that "the exclusion provision contains no expressed reference to the FDIC or to any successors, assigns or receivers." *Am. Cas. Co.*, 791 F.Supp. at 278. "Such language," the court explained, "could easily have been made a part of the policy exclusion if it was so intended." *Id.*

The insuring agreement between BancInsure and Columbian has done precisely that here, providing that claims by "any ... receiver of the Company" are excluded. While the presence of a shareholder derivative action exception may contribute to a finding of ambiguity absent such clear language, it cannot overcome the plain language of the policy. *See Marquis*, 961 P.2d at 1219 ("[I]f the language of the written instrument is clear, there is no room for rules of construction."). A contract is ambiguous under Kansas law, and thus interpreted in the manner most favorable to the insured, only when the court is left "genuinely uncertain" as to which of multiple meanings is the appropriate one. *Liggatt*, 46 P.3d at 1125. Here, we have no such uncertainty, and thus will not "strain to create an ambiguity where, in common sense, there is none." *Bugg*, 962 P.2d at 519.[3]

3. *The Regulatory Endorsement Does Not Render the Insured v. Insured Exclusion Ambiguous*

Next, Appellants argue that the endorsement to the regulatory exclusion ren-

---

**3.** In its reply briefing, the FDIC asserts that the fact courts interpreting such insured v. insured exclusions have interpreted them differently supports a finding of ambiguity. Aplt. FDIC Reply Br. 13 (citing *Crawford v. Prudential Ins. Co.*, 245 Kan. 724, 783 P.2d 900, 908 (1989); *Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Ass'n*, 215 Kan. 937, 529 P.2d 171, 180 (1974) (finding ambiguity based on "such a contrariety of judicial opinion" regarding the terms at is-

sue)). Neither the FDIC nor director-defendants raised this argument in their opening briefing, and we decline to consider it. *See United States v. Williamson*, 746 F.3d 987, 993 (10th Cir.2014). Even if we were to consider it, we question whether the Kansas Supreme Court would allow Appellants to bootstrap a showing of ambiguity on a sole decision—hardly a "contrariety of judicial opinion"—finding the language at issue here ambiguous.

ders the insured v. insured exclusion ambiguous as applied to claims by the FDIC–R. The endorsement amended the policy "by the deletion of" the regulatory exclusion, which had previously excluded coverage for "any action or proceeding brought by or on behalf of any federal or state regulatory or supervisory agency or deposit insurance organization," including actions "which any such Agency may bring as receiver." App. 89. The endorsement further set an aggregate liability cap of $5,000,000 for claims brought by "any federal or state regulatory or supervisory agency or deposit insurance organization." *Id.* Appellants offer several arguments why this endorsement at least created an ambiguity as to whether claims by the FDIC–R were covered under the policy.

 First, Appellants contend that the maximum aggregate liability cap affirmatively provided coverage over claims previously excluded under the regulatory exclusion. Thus, they argue, under Kansas law, the endorsement prevails over the original printed provisions. Aplt. FDIC Br. 19–20; Aplt. McCaffree Br. 27–28 (citing *Lindesmith v. Republic Mut. Fire Ins. Co.,* 189 Kan. 201, 368 P.2d 35, 38 (1962); *Wise v. Westchester Fire Ins. Co.,* 463 F.2d 386, 389 (10th Cir.1972)). But we see no language in the endorsement that affirmatively grants coverage over all of those claims previously excluded by the regulatory exclusion. The removal of the regulatory exclusion permits such coverage, but does not require it, as removing an exclusion is not the same thing as affirmatively provid-

ing coverage. And the liability cap, like others within the policy, *see* Aplee. Supp. App. 2, simply sets a sub-limit of liability for certain claims—it does not suggest that all claims of such nature are covered notwithstanding other applicable exclusions.

The Kansas Court of Appeals has held that an endorsement only alters a policy "to the extent specifically called for in the explicit language of the endorsement." *Thornburg v. Schweitzer,* 44 Kan.App.2d 611, 240 P.3d 969, 977 (2010). Here, there is no language—let alone explicit language—in the endorsement's liability cap affirmatively providing coverage over those claims previously excluded. To the contrary, the endorsement's explicit language suggests the opposite, as it makes clear that "[n]othing herein contained shall be held to vary, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy other than as above stated." [4] App. 89. In short, "[n]othing in the ... endorsement indicates that it replaces or supercedes the general provisions and exclusions" of the policy. *Thornburg,* 240 P.3d at 977.

 Next, Appellants argue that the endorsement at least shows "a clear intent to provide coverage" over actions previously excluded under the regulatory exclusion, creating a least an ambiguity as to coverage. Aplt. FDIC Br. 17; Aplt McCaffree Br. 23. Appellants cite no authority from Kansas courts suggesting the deletion of an exclusion gives rise to an inference of

---

4. We are unpersuaded by Appellants' contention that, because two other endorsements to the policy more explicitly provide that they remain subject to other policy exclusions, we should interpret the regulatory endorsement to supercede other exclusions. Aplt. FDIC Br. 19–20 (citing App. 91, 100). The plain implication of the regulatory endorsement's language that "[n]othing herein contained" shall "vary, waive, or extend *any of the terms* " of the policy is that the policy's other exclusions still apply to the endorsement.

coverage,[5] and courts in different states disagree on whether such an inference is appropriate.[6]

We doubt the Kansas Supreme Court would endorse an inference of coverage based on the deletion of an exclusion.[7] But even assuming *arguendo* that it would under some circumstances, we do not think it would do so here, where the endorsement clearly evinces the parties' intent not to "vary" or "waive" any other limitations of the policy. *Cf. Essex Ins. Co. v. Vincent*, 52 F.3d 894, 897–98 (10th Cir.1995) (rejecting an inference of coverage from the deletion of an exclusion under Colorado law based on a similar endorsement provision). There is simply no indication in the endorsement that, by removing the regulatory exclusion, the parties sought to provide coverage over all regulatory actions, even those for which coverage was unambiguously barred by other exclusions.

Finally, Appellants assert that interpreting the insured v. insured exclusion to bar claims by the FDIC–R yields two impractical results. First, they assert this construction renders the regulatory endorsement meaningless. Aplt. McCaffree Br. 30. We disagree. The endorsement still permitted (subject to other exclusions) coverage over claims brought by regulatory agencies other than the FDIC as receiver, such as claims by the Securities and Exchange Commission, Equal Employment Opportunity Commission, or other federal or state agencies.[8] *See Davis*, 2013 WL 1223696, at *11.

Relatedly, they assert this construction renders the language of the original regulatory exclusion—that claims by a "deposit insurance organization" and agency "as receiver" are excluded—superfluous, as such claims would already be excluded by the insured v. insured exclusion. They con-

**5.** Appellants cite only *Empire Underground Storage, Inc. v. Protective Nat'l Ins. Co.*, 685 F.Supp. 1187, 1191 (D.Kan.1988), a federal district court case that cites no Kansas authority for this proposition.

**6.** *Compare Valassis Commc'ns, Inc. v. Aetna Cas. & Sur. Co.*, 97 F.3d 870, 873 (6th Cir. 1996) ("Insurance contract law also dictates that when an endorsement deletes language from a policy, a court must not consider the deleted language in its interpretation of the remaining agreement."), *with Stubbe v. Guidant Mut. Ins. Co.*, 257 Wis.2d 401, 651 N.W.2d 318, 324 (Ct.App.2002) ("An insured may reasonably expect that when an insurance company deletes limiting language in the policy, the purported limitations no longer apply.").

**7.** *Thornburg's* teaching that an endorsement only alters a policy "to the extent specifically called for in the explicit language of the endorsement" seems to indicate that Kansas courts would not find coverage to be implicit based on the removal of policy language. 240 P.3d at 977. Furthermore, in *Owings v. Gifford*, the Kansas Supreme Court rejected the argument that a policy was ambiguous as to a

claim that fell within an exception to one exclusion but was excluded by another. 237 Kan. 89, 697 P.2d 865, 869–70 (1985). The court emphasized that coverage must be "determined by resort to the contract as a whole, including *all* exclusionary provisions." *Id.* (emphasis added). Likewise, here, we think the Kansas Supreme Court would be hesitant to infer coverage from the deletion of an exclusion in the face of a separate exclusion whose plain language bars coverage.

**8.** KIGA also asserts that the regulatory endorsement would permit coverage of claims by the FDIC outside of its role as receiver of the bank, such as civil money penalties. Aplee. Br. 35. But it is illegal for a bank to purchase insurance for its directors and officers against civil money penalties by the FDIC. *See* 12 U.S.C. § 1828(k)(5)-(6); 12 C.F.R. § 359.1(1)(2)(i). Likewise, under Kansas law, the Kansas Commissioner may assess civil money penalties against directors and officers, but no bank may purchase insurance for officers or directors against such suits. *See* Kan. Stat. Ann. § 9–1809(f).

tend this violates the fundamental canon of construction that courts must strive to give meaning to every word in a contract. Aplt. McCaffree Br. 32 (citing *Dillard Dep't Stores, Inc. v. State Dep't of Human Res.*, 28 Kan.App.2d 229, 13 P.3d 358, 364 (2000)). But this canon of construction is not absolute. *See Dillard*, 13 P.3d at 364 (treating the canon as a preference); *see also King v. Burwell*, — U.S. —, 135 S.Ct. 2480, 2492, 192 L.Ed.2d 483 (2015) ("[O]ur preference for avoiding surplusage constructions is not absolute." (citation omitted)). Notably, the Kansas Supreme Court has suggested that this canon cannot overcome the plain meaning of words. *See State v. Sedillos*, 279 Kan. 777, 112 P.3d 854, 858–59 (2005). This is especially so in the context of insurance policies, as they "are notorious for their simultaneous use of both belts and suspenders, and some overlap is to be expected." *Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d 61, 68 (1st Cir. 2012); *see also United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108–09 (2d Cir.1993) (rejecting the argument that overlap in insurance policy exclusions renders ambiguous otherwise unambiguous language). Here, the mere fact of overlap between the two exclusions does not introduce ambiguity into the plain language of the insured v. insured exclusion barring coverage of claims by "any . . . receiver of the Company."

#### 4. *BancInsure's Prior Statements Cannot Overcome the Plain Language of the Insured v. Insured Exclusion*

Lastly, Appellants assert that we should consider internal and external statements made by BancInsure suggesting coverage of claims by the FDIC–R under the regulatory endorsement. Aplt. FDIC Br. 27–33; Aplt. McCaffree Br. 32–35. But a finding of ambiguity is a prerequisite to considering such extrinsic evidence under Kansas law. *See Thoroughbred Assocs., L.L.C. v. Kansas City Royalty Co., L.L.C.*, 297 Kan. 1193, 308 P.3d 1238, 1247 (2013) (absent contractual silence or ambiguity, "extrinsic evidence is not admissible to contradict, alter, or vary the terms of a written instrument"). Because we conclude the insured v. insured exclusion unambiguously bars coverage of claims by the FDIC–R against director-defendants, we reject this argument.

### B. *Judicial Estoppel*

Appellants next argue that the district court erred in concluding that BancInsure was not judicially estopped from denying coverage of the FDIC–R's claims against the director-defendants based on its answers to interrogatories in the *Columbian* litigation. Aplt. FDIC Br. 32 n. 12; Aplt. McCaffree Br. 35–43. The district court declined to apply the doctrine of judicial estoppel, and we review its determination for an abuse of discretion. *Queen v. TA Operating, LLC*, 734 F.3d 1081, 1086 (10th Cir.2013). A district court abuses its discretion "when it makes a clear error of judgment, exceeds the bounds of permissible choice, or when its decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment." *Id.* (internal quotation marks omitted).

The doctrine of judicial estoppel is designed "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (internal quotation marks and cita-

tion omitted). The circumstances in which judicial estoppel applies are "not reducible to any general formulation of principle," *id.* at 750, 121 S.Ct. 1808; nevertheless, the Supreme Court has identified three relevant factors. First, courts ask whether a party's later position is "clearly inconsistent" with its former position. *Id.* Second, courts ask whether the party "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (internal quotation marks omitted). And third, courts consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751, 121 S.Ct. 1808; *see also Eastman v. Union Pac. R.R. Co.,* 493 F.3d 1151, 1156 (10th Cir.2007).

 This circuit applies the doctrine of judicial estoppel "both narrowly and cautiously." *Hansen v. Harper Excavating, Inc.,* 641 F.3d 1216, 1227 (10th Cir.2011) (quoting *Bradford v. Wiggins,* 516 F.3d 1189, 1194 n. 3 (10th Cir.2008)). We do so because "judicial estoppel is a powerful weapon ... and there are often lesser weapons that can keep alleged inconsistent statements in check while preserving a party's option to have its day in court." *Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.,* 767 F.3d 987, 993 (10th Cir. 2014). Notably, we have held that judicial estoppel only applies when the position to be estopped is one of fact, not one of law. *See United States v. Villagrana–Flores,* 467 F.3d 1269, 1279 (10th Cir.2006) ("[T]he existence of a Fourth Amendment violation is a legal position, not a factual one, and therefore the first judicial estoppel factor has not been satisfied."); *Kaiser v. Bowlen,* 455 F.3d 1197, 1204 (10th Cir.2006) ("The stance taken in the tax return cannot give rise to judicial estoppel: in it, the Partnership is taking a legal position, not a factual one."); *Johnson v. Lindon City Corp.,* 405 F.3d 1065, 1069 (10th Cir.2005) ("The requirement that a previous court has accepted the prior inconsistent factual position ensures that judicial estoppel is applied in the narrowest of circumstances." (internal quotation marks and citation omitted)); *see also Emergency One, Inc. v. Am. Fire Eagle Engine Co.,* 332 F.3d 264, 274 (4th Cir.2003) ("Judicial estoppel applies if the party to be estopped intentionally asserts a position of fact that is inconsistent with a factual position taken during previous litigation.").[9]

9. Despite failing to acknowledge any of the above-cited Tenth Circuit decisions in their briefing, Appellants at oral argument demonstrated great familiarity with the cases and argued that the Tenth Circuit's approach to judicial estoppel is inconsistent with *New Hampshire v. Maine.* We acknowledge that other courts have applied the doctrine of judicial estoppel to positions of law, not merely positions of fact. *See Helfand v. Gerson,* 105 F.3d 530, 535 (9th Cir.1997) (noting that "[t]he greater weight of federal authority, however, supports the position that judicial estoppel applies to a party's stated position, regardless of whether it is an expression of intention, a statement of fact, or a legal asser-

tion" and citing cases from several federal circuits); Charles Alan Wright & Arthur R. Miller, 18B Federal Practice & Procedure Jurisdiction § 4477 (2d ed. 2015) ("Little would be left of judicial estoppel if any trace of law were to defeat preclusion. Judicial estoppel may properly apply even when the facts are clear and only legal positions have changed, so long as the underlying facts are constant."). Nevertheless, the above-cited decisions from this court post-date *New Hampshire,* and "[o]ne panel of this court cannot overrule the judgment of another panel absent en banc consideration or an intervening Supreme Court decision that is contrary to or invalidates our previous analysis." *United*

Appellants seek to have BancInsure judicially estopped from asserting that claims by the FDIC–R against the director-defendants are not covered under the policy. But whether such claims are covered under the policy is a question of law, not fact. *See AMCO Ins. Co.*, 929 P.2d at 165. Thus, under this court's precedent, the doctrine of judicial estoppel is inapplicable,[10] and the district court did not abuse its discretion in declining to apply it.

AFFIRMED.

*States v. White*, 782 F.3d 1118, 1126–27 (10th Cir.2015) (quoting *United States v. Nichols*, 775 F.3d 1225, 1230 (10th Cir.2014)).

10. Appellants cite *Hicks v. Cadle*, 436 Fed. Appx. 874, 877–78 (10th Cir.2011) (unpublished), which held that an individual was judicially estopped from denying an arbitration clause covered particular claims after earlier asserting that the arbitration clause "clearly encompasses all issues and claims." *Hicks* suggested that the Supreme Court's articulation of the doctrine of judicial estoppel in *New Hampshire* "reflects [a] focus on change of legal position." 436 Fed.Appx. at 878. However, unlike *Villagrana–Flores, Kai-*

*ser*, and *Johnson, Hicks* is an unpublished decision and thus not binding precedent. *See* 10th Cir. R. 32.1. Moreover, the *Hicks* court's conclusion relied on the fact that the appellant "has not cited any authority undercutting the guidance we have drawn from the language and substance of the *New Hampshire* decision," 436 Fed.Appx. at 879, and it is apparent from the appellant's briefing that the above-cited, binding Tenth Circuit authority was not brought to the court's attention. *See* Aplt. Br. & Aplt. Reply Br., *Hicks*, 436 Fed.Appx. 874 (No. 10–1575).